John Naprawa and Bridget Naprawa, Appellees, v. Chicago Flat Janitors' Union, Local No. 1 and William C. Quesse, Appellants.

Gen. No. 41,956.

Heard in the third division of this court for the first district at the October term, 1941. Opinion filed June 24, 1942.

JOSEPH A. RICKER, of Chicago, for appellants.

MAXIMILIAN J. ST. GEORGE, of Chicago, for appellees.

REHEARING OPINION.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

On April 10, 1940 John Naprawa and Bridget Naprawa, his wife, filed a complaint in the circuit court of

Cook county against Local No. 1 of the Chicago Flat Janitors' Union and William C. Quesse, alleging ownership of the premises at 2114–22 N. Kedzie Boulevard, Chicago, consisting of a three-story brick and English basement court apartment building, containing 49 four and five room apartments and 2 shops; that the premises were subject to a mortgage indebtedness of $70,000, payable at the rate of $625 a month; that since September 28, 1939 they (plaintiffs) had been in possession, control and management of the premises, and that plaintiff, John Naprawa had been doing the janitor work. The complaint contains 11 paragraphs and a prayer, paragraphs 5 to 11 reading:

"5. That immediately upon taking possession of said premises, plaintiffs had trouble and difficulty with defendants in that defendants refused to permit plaintiff, John Naprawa, to act as janitor for said premises, and that only after to-wit: November 7, 1939, when said John Naprawa paid to defendants the sum of $50.00 did defendants permit said plaintiff to act as janitor for said premises; that defendants continued thereafter to bother, harass and disturb plaintiffs, and made demands upon them for the payment of additional sums, all contrary to equity and good conscience, under the threat of picketing and calling a strike against the premises.

"6. That on April 9, 1940 was the last time the defendants and particularly said William Quesse, who was and is business agent of said Chicago Flat Janitors' Union Local No. 1, informed plaintiff that unless plaintiffs engaged a union janitor to take care of said premises, they would immediately cause said premises to be picketed.

"7. That in the early morning of April 10, 1940, defendants did cause said premises to be picketed and placed at said premises their servant and agent to act as picket, and to prevent delivery of goods and merchandise into said building, and to prevent any work

from being done upon said premises; that defendants have prevented and are preventing delivery to the tenants in said premises of milk, laundry and food and other goods, wares and merchandise and have prevented painters and decorators from doing painting and decorating in and about said premises, and have called off the painters and decorators who were engaged by plaintiffs to paint and decorate said premises for various tenants requiring same.

"8. That unless restrained by an injunction of this court, defendants will continue to picket said premises and to do the acts hereinabove set forth, all of which acts will result in a complete destruction of plaintiffs' business and prevent them from making said monthly payments on account of said mortgage, and will inflict irreparable damage and injury upon them.

"9. That because of the nature of the illegal acts of defendants and their methods employed by them to accomplish their scheme and purpose, and the great number of persons who have combined with them in said illegal, unlawful and oppressive combination and confederation, plaintiffs have suffered and are suffering irreparable damage and have no adequate remedy at law, and any attempt to attain such remedy would involve a multiplicity of suits.

"10. That plaintiffs are informed and believe, and therefor charge the fact to be, that defendants are not financially responsible and have no property upon which an execution could be levied or from which a judgment could be collected.

"11. That plaintiff, John Naprawa, is well able and capable and desires to act as janitor for said premises, and does not require the services of any other janitor." Plaintiffs prayed that a writ of injunction issue restraining the defendants, their officers, agents and attorneys from "calling a strike against and picketing or causing said premises hereinabove described to be picketed, and enjoining and

restraining defendants from preventing or causing to be prevented the delivery of any goods, wares and merchandise to said premises, and enjoining and restraining defendants from calling any strike on said premises or preventing or interfering with any painters, decorators or workmen from working on said premises, and enjoining and restraining defendants from molesting, harassing or interfering with plaintiff, John Naprawa, from acting as janitor of said premises." On April 22, 1940, pursuant to leave granted, plaintiffs filed an amendment to the complaint consisting of two additional paragraphs, known as 7–a and 7–b, which read:

"7–a. That defendants did and accomplished the things set forth in paragraph 7 of the original complaint by placing and maintaining a picket at the rear of said premises and that said picket stopped all persons endeavoring to make said deliveries, and walked back and forth in the rear of said premises displaying a sign that the owner of said premises was unfair to union labor and to the Janitors' union, and that said picket falsely told and informs all persons desiring to make deliveries that the plaintiffs were employing non-union labor, whereas in truth and in fact the plaintiffs were not employing non-union labor as janitor but that the plaintiff, John Naprawa himself, being half owner of said premises together with the other plaintiff, was doing the janitor work on said premises, as he had a right to do; that said picket falsely informs all persons making deliveries of milk, food, coal, laundry and other goods and merchandise, that plaintiffs were unfair to the Janitors' Union in that they were employing non-union janitor, thereby preventing delivery of such milk, food, coal, laundry and other goods and merchandise to the tenants of said premises; that by the false representation to the decorators and painters who were working on said premises, that plaintiffs were employing non-union janitor, they

caused said painters and decorators to refuse to do any further work on said premises; that when any premises in Chicago, Illinois are picketed, as aforesaid, all union decorators and painters, and all deliveries of goods, wares and merchandise to said premises are thereby prevented; that the mere fact that the premises are being picketed as aforesaid is sufficient to prevent the delivery of any goods, wares and merchandise and the doing of any painting and decorating to and in said premises; that there is not involved in this matter a labor question, namely: the employment of a union janitor on said building, as the owner of said building has been, is and wishes to act as janitor therefor.

"7–b. That defendants, by means of the foregoing facts and because of the premises, have been and are trying to force plaintiff John Naprawa, to join said Chicago Flat Janitors' Union, Local No. 1, and have told him that unless he joins said union they will continue to picket said building and to call off all laborers and decorators on said premises; that said John Naprawa does not intend to join said union, nor has he ever had any intention to join said union, but that he wishes to be left alone by defendants to take care of said premises and to act as janitor therein."

Defendants answered and denied that the premises were owned solely by the plaintiffs, asserted that plaintiff John Naprawa discharged a member of the defendant union without cause; that when requested to reinstate the member so discharged he (John Naprawa) requested that he be permitted to become a member of the union; that Naprawa paid to the union the sum of $50 on account for his initiation fee and promised to pay the balance within 60 days, and that at the time of filing the complaint Naprawa owed a balance of $180 on his initiation fee and dues. The answer further stated that defendant William C. Quesse informed plaintiffs that the union would require them

to reinstate the discharged janitor or pickets would be placed in the vicinity of the building. The answer admitted that a member of the union had been stationed on the sidewalk about the premises and had peaceably advised and persuaded other persons to cease and abstain from performing any work or labor for the plaintiffs, and had advised such persons that plaintiffs were unfair to the members of the union. Defendants denied that the union or any member or representative of the union intimidated or coerced plaintiffs or any employee of plaintiffs, or any person making deliveries to the premises. The answer also asserted that prior to September 28, 1939, a member of the union was employed as a janitor of the building and that on April 10, 1940 there existed a labor dispute between the union and plaintiffs and that the conduct of the members of the union in connection with the picketing of the building was entirely lawful. The answer further denied that plaintiffs would suffer irreparable loss or damage by reason of any acts committed by defendants, and denied that defendants were financially irresponsible and unable in law to respond should a judgment for damages be rendered against them. On April 11, 1940 plaintiffs moved for a temporary injunction. Consideration of this motion was postponed from time to time while the parties awaited the handing down of an opinion by the Supreme Court of the United States in the case of *American Federation of Labor v. Swing*. In the meantime, the pickets were withdrawn. The case came on for trial on June 30, 1941. From April 11, 1940 to the day of trial there was no attempt to picket.

Plaintiff, John Naprawa, testified that he came to the United States from Poland in 1912; that he was an American citizen; that he could read and write English but not very well; that plaintiffs paid $95,000 for the property, $25,000 of which was cash; that the balance in the form of a mortgage was being paid in

instalments of $625 per month; that plaintiffs moved into the premises on September 3, 1939; that a union janitor was then performing the janitor work; that he (Naprawa) decided to do the janitor work himself; that he gave notice to the janitor that he, Naprawa, would dispense with the union janitor's services beginning with November 1, 1939; that the janitor called the business agent of the union, William C. Quesse; that the business agent placed a picket at the front of the building and one at the alley; that the picketing continued for seven days; and that the witness talked to Quesse, who told witness he "had to join the union." Witness further testified that he did not want to join the union; that he owned the building; that he gave Quesse $50; that on delivery of the $50 Quesse left and the pickets were withdrawn. Witness further testified that he allowed the janitor to occupy an apartment in the building during the month of November 1939, without paying rent; that he also paid the janitor $50; that he did not have any trouble from early in November 1939 until April 1940; that about April 9, 1940, Quesse came around and asked him for more money; that when he refused to pay, two pickets were again placed in the vicinity of the premises, that they carried signs; and that the picketing continued for two days. Witness also testified that on the occasions when the pickets were present, painters and decorators employed to work in the building were informed by the pickets that they could not work; that such painters and decorators did not work; and that the pickets stopped all deliveries by employees of grocery stores, laundries and dairies. He further testified that he desired to do the janitor work himself and that he did not wish to belong to the union. On cross-examination, witness testified that he had been a janitor for 14 years; that he was the janitor for a building at Lavergne and Fullerton avenues, Chicago; that in the Spring of 1940 Quesse asked him for more money;

that he replied that he did not have the money and that he did not want to join the union; that the following day (in April 1940) the pickets were again patrolling the sidewalk and alley adjoining plaintiff's property; and that the pickets carried signs reading "This building unfair to organized labor. Chicago Flat Janitors' Union, Local No. 1,"; that they walked up and down, and once in a while said "Building on strike." In answer to the question, "You did not have any trouble at all, nobody was hurt there at any time, nobody was arrested?" he answered, "No." He also answered that the police were not called at any time and that he did not have any difficulty since November 1, 1939. Witness also testified that when the pickets were placed in the vicinity of his building for two days in April 1940, they were there from ten in the morning until noon. No further testimony was offered. The chancellor then stated, "I think this is not a good case. I will dismiss this case for want of equity at this point. There will have to be another case made out. . . . It is dismissed for want of equity." However, on the insistence of the attorneys for plaintiffs, the court permitted plaintiffs to dismiss the case without prejudice, and such an order was entered on June 30, 1941. On July 2, 1941 the attorney for plaintiffs served a notice on the attorney for the defendants that on the following day he would appear before the chancellor and ask that the order dismissing the cause be vacated, that the cause be reset for trial, that he be granted leave to file an amendment to the complaint, and that an injunction issue. On July 3, 1941 the chancellor vacated the order dismissing the cause, reinstated the cause and allowed plaintiffs to file instanter a second amendment to their complaint by striking from the complaint paragraph 5 and substituting paragraph 5-a. Paragraph 5 is the paragraph which charges that the defendants harassed plaintiffs and caused pickets to be placed near the premises until plaintiffs paid sums

of money to defendants, including the $50 which was paid. The amendment permitted to be filed on July 3, 1941, known as paragraph 5-a, reads:

"5-a. That immediately upon taking possession of said premises, plaintiffs had trouble and difficulty with defendants in that defendants refused to permit plaintiff, John Naprawa, to act as janitor for said premises and that for the purpose of being permitted to act as janitor for said premises the said John Naprawa told said William C. Quesse that he would join the Union and paid to said Quesse the sum of $50.00, but that the plaintiff, John Naprawa, immediately changed his mind about joining the Union and refused to make any additional payments to join said Union and does not wish to join said Union but desires to take care of and manage and act as janitor for said premises."

On July 3, 1941 the attorney for plaintiff stated to the court that on the preceding day the picketing was resumed, and that plaintiffs were then in the same position as when the pickets were first around the premises. Without hearing any testimony or being presented with any affidavits, the chancellor stated that the attorney for the plaintiffs was going away on a vacation on the following day; that he would vacate the order of dismissal; that when the matter came up he would dismiss it again just as he had on June 30th, and he would ask the attorney for the defendants to agree to the withdrawal of the pickets. Defendants' attorney replied that the pickets had been withdrawn for a period of 18 months while the litigants were awaiting the opinion in the *Swing* case [which was decided in February 1941] and that he could not again agree to the withdrawal of the pickets. He stated that his clients had a right to peacefully picket the premises, and called attention to the fact that there was no petition or affidavit to support the motion to vacate the order of dismissal, or for the granting of an injunction. The court stated: "I am going to sign the

order for the injunction presented on the testimony heard by me on June 30, 1941, and the statement of counsel this morning that the picketing has been resumed. The owner has a right to act as janitor for his own building." The court then entered an order that a writ of injunction issue forthwith, restraining the defendants, their agents and attorneys from calling a strike against and picketing the premises; from preventing the delivery of goods, wares and merchandise to the premises; from calling any strike on the premises or interfering with John Naprawa, and from acting as janitor of the premises until the further order of the court. The defendants appeal from the order awarding the injunction.

The recitation of the leading facts in the record shows that the case was heard on its merits and that the court dismissed the complaint for want of equity. Three days later the court vacated the order of dismissal and granted an injunction. At that time there was no further hearing. Plaintiffs did file an amendment to the complaint by adding paragraph 5–a and striking paragraph 5. Paragraph 5 proceeded on the theory that Quesse extorted or "shook down" Naprawa for the sum of $50. The cross-examination of Naprawa brought out that the $50 was received as a down payment on the initiation fee of Naprawa as a member of the union, and that Naprawa agreed to pay a balance of $150. It is apparent that the substitution of paragraph 5–a for paragraph 5 was occasioned by the recognition by plaintiffs that in view of the testimony of Naprawa, paragraph 5 did not state the truth. It is interesting to note that Naprawa swore to the truth of the allegations of the original complaint as well as to the truth of the amendment containing paragraph 5–a. When the order appealed from was entered, the situation was the same as when the cause was dismissed, except that the picketing had been resumed. The parties to this appeal treat it as an appeal from

an interlocutory order. Defendants argue that the injunction violates the constitutional rights of defendants as preserved by Section 4, Article 2 of the Constitution of Illinois, and by the First and Fourteenth Amendments to the Constitution of the United States. Section 4, Article 2 of our State Constitution provides that "Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that liberty; . . . ." The 1st Amendment to the Constitution of the United States prohibits Congress from making any law abridging the freedom of speech or of the press. The 1st Section of the 14th Amendment of the Constitution of the United States provides that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." Plaintiffs maintain that "the owner of an apartment building, who is not a member of the Janitors' Union, may do the janitor work therein, and the union may not picket the building by pickets, who tell all service and delivery men that the owner is unfair to union labor, that the building is on strike and that they cannot deliver or service the building (and who stop such deliveries and service and all decorating therein), with the result that no delivery or service men will call and deliver and no painters will decorate the apartments." In support of their position, plaintiffs cite the language of the preamble of our Federal Constitution that the people in order "to secure the blessings of liberty to themselves and their posterity," ordained and established such constitution. They point out that the 5th Amendment of the Federal Constitution states that no person shall be deprived of life, liberty or property without due process of law, and that the 14th Amendment provides that no State shall deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law. Plaintiffs assert that

the law must protect John Naprawa in his right to work as a janitor in the building of which he is part owner to the same extent as it must protect janitors in their rights when they unite in a labor union. Both parties discuss the evidence introduced during the hearing of June 30, 1941. There was no showing of violence, coercion, threat or intimidation on the part of the defendants, or against any person doing business with plaintiffs. While the complaint charges that persons making deliveries to the building were prevented from doing so, and that painters and decorators were prevented from working in the building, it is apparent that this was not caused by any coercion, but rather by the fact that two pickets were patrolling the vicinity of the building. It is well established that peaceful picketing in labor disputes is lawful. In addition to carrying signs bearing the legend, ''This building unfair to organized labor, Chicago Flat Janitors' Union Local No. 1,'' the pickets stated substantially the same thing to delivery men and to painters and decorators who intended to enter the premises. In the case of *American Federation of Labor v. Swing*, 312 U. S. 321, the union endeavored to unionize Swing's beauty parlor. Picketing of the shop followed. Swing and his employees filed a complaint, praying for an injunction. They charged the use of false placards in picketing and forcible behavior towards Swing's customers. The complaint was dismissed. In sustaining the action of the trial court the Supreme Court said at page 325:

''We are asked to sustain a decree which for purposes of this case asserts as the common law of a state that there can be no 'peaceful picketing or peaceful persuasion' in relation to any dispute between an employer and a trade union unless the employer's own employees are in controversy with him. Such a ban of free communication is inconsistent with the guarantee of freedom of speech. That a state has ample

power to regulate the local problems thrown up by modern industry and to preserve the peace is axiomatic. But not even these essential powers are unfettered by the requirements of the Bill of Rights. The scope of the Fourteenth Amendment is not confined by the notion of a particular state regarding the wise limits of an injunction in an industrial dispute, whether those limits be defined by statute or by the judicial organ of the state. A state cannot exclude workingmen from peacefully exercising the right of free communication by drawing the circle of economic competition between employers and workers so small as to contain only an employer and those directly employed by him. The interdependence of economic interest of all engaged in the same industry has become commonplace. *American Steel Foundries v. Tri-City Council*, 257 U. S. 184, 209. The right of free communication cannot therefore be mutilated by denying it to workers, in a dispute with an employer, even though they are not in his employ. Communication by such employees of the facts of a dispute, deemed by them to be relevant to their interests, can no more be barred because of concern for the economic interests against which they are seeking to enlist public opinion than could the utterance protected in Thornhill's case. 'Members of a union might, without special statutory authorization by a State, make known the facts of a labor dispute, for freedom of speech is guaranteed by the Federal Constitution.' *Senn v. Tile Layers Union*, 301 U. S. 468, 478.'' In the case of *Senn v. Tile Layers Protective Union, Local No. 5*, 301 U. S. 468, 57 Sup. Ct. 857, it appeared that plaintiff conducted a small business, in the main, from his residence, with a showroom elsewhere. He employed one or two journeymen tile layers and one or two helpers. Working with his own hands with tools of the trade, he performed personally on the jobs much work of a character commonly done by a tile layer or a helper. Neither Senn nor

any of his employees was a member of either the Tile Layers Union or the Tile Layers Helpers' Union. The unions endeavored to induce Senn to become a union contractor. Senn expressed a willingness to execute the agreement requested by the union. One article of the agreement provided that Senn could not work with tools or act as a helper, but that all installation of materials should be done by journeymen members of the Tile Layers Union. He refused to sign the agreement without this clause being eliminated. He contended that the right to work in his business with his own hands is a right guaranteed by the Fourteenth Amendment and that the State may not authorize unions to employ publicity and picketing to induce him to refrain from exercising it. The court said at page 862:

"Members of a union might, without special statutory authorization by a state, make known the facts of a labor dispute, for freedom of speech is guaranteed by the Federal Constitution. . . . The sole purpose of the picketing was to acquaint the public with the facts and, by gaining its support, to induce Senn to unionize his shop. There was no effort to induce Senn to do an unlawful thing. There was no violence, no force was applied, no molestation or interference, no coercion. There was only the persuasion incident to publicity. . . . The unions acted, and had the right to act as they did, to protect the interests of their members against the harmful effect upon them of Senn's action." The facts in the recent case of *Lawrence Avenue Building Corp. v. Van Heck,* 377 Ill. 37, are somewhat analogous to the facts in the case at bar. They both involve picketing by members of Local No. 1 of the Chicago Flat Janitors' Union. However, in the *Van Heck* case a corporation owned the building. In the instant case the building is owned by John Naprawa and Bridget Naprawa. John Naprawa, one of the owners, is doing the janitor work. As

stated in the *Swing* case, it is not unlawful to picket
even where there is no dispute between the employer
and employees of the plant that is being picketed. In
the case of *O'Neil v. Building Service Employees
International Union No. 6* (Wash. (2d)), 115 P. (2d)
662, it appeared that plaintiff owned two apartment
houses in the city of Seattle. She sought to enjoin
the Building Service Employees International Union
Local No. 6 and its agents from picketing her apart-
ment houses, or using any coercive measures whatso-
ever with the intent to compel her to recognize and
join the union. A demurrer interposed to the com-
plaint was sustained and she appealed to the Supreme
Court of Washington. The complaint alleged that she
was a widow with several adult children who were ca-
pable of assisting her in the management of the two
apartment houses owned by her, and that she was in-
formed by a delegate of the union that unless she
joined the union, a boycott would be declared against
her and her business. The complaint also alleged that
no person or persons were being hired in connection
with the operation of the two apartment houses, and
that there was no controversy concerning the employ-
ment of workmen or wages. The pickets patrolled in
front of the apartment houses bearing signs announc-
ing that the apartment houses were unfair to organ-
ized labor. The court discussed the *Swing* case and
said at page 664:

"That case presented the question as does the case
at bar, whether the right of freedom of speech is vio-
lated by an injunction restraining a labor union from
peacefully picketing a place of business on the ground
that such place of business is unfair to organized labor.
. . . If a labor union has the legal right to picket,
as unfair to organized labor, the place of business of
an employer who refuses to compel his employees to
join such union or to discharge them for refusal to be-
come members of the picketing union, it logically fol-

lows that a labor union has the legal right to go a step farther and peacefully picket the place of business of a person who has no employees, one doing business as an individual proprietor, to compel, against his will, such lone person or individual proprietor to join the picketing union.'' Plaintiff inquires: ''Is the owner of an automobile unfair to labor if he drives his own car (there is a chauffeurs union); is he unfair to organized labor if he fixes his car (there is a machinists union); is he unfair to organized labor if he cleans and washes his car (there is a union for this class of workers)?'' We do not believe that the situations contemplated in this inquiry are comparable to the facts in the case before us.

The apartment building is owned by John Naprawa and his wife. This building contains 49 apartments and 2 shops. It is clear that he is not acting as a janitor solely for his own household. He is acting as a janitor for 49 households and for the proprietors of the 2 shops. At the time plaintiffs purchased the property they knew that a member of the defendant union was employed as a janitor. This man was discharged by plaintiffs and John Naprawa took over the janitor's work. A dispute arose between plaintiffs and the union. Naprawa joined the union and paid $50 on account of the initiation fee of $200. Thereupon the pickets patrolling the vicinity of the premises were withdrawn. Naprawa did not pay the balance due on his initiation fee and the pickets were restored. There was no violence or threat of violence. John Naprawa clearly had the right to perform the janitor work. The union also had a right to inform their members and the public by means of pickets that in so doing they considered the owners of the building unfair to organized labor. Under the circumstances disclosed by the record and under the recent opinions of our Federal and State Supreme Courts, the members of the union did not violate any law in patrolling the vicinity of

plaintiffs' premises and informing persons who might pass, including deliverymen, painters and decorators, that plaintiffs were unfair to the members of the union. Under the circumstances, this was the lawful exercise of the right of freedom of speech as defined by the recent cases.

In their petition for rehearing plaintiffs suggest that "this appeal is only against the restraint on peaceful picketing." They point out that the injunctional order is divided into four parts. The record shows that defendants appeal from the entire order. Plaintiffs state that since this court found that Naprawa has the right to perform the janitor work, it was error to reverse the order *in toto,* and states further that as this court found that the union may peacefully picket, only the first part of the order which restrains defendants from calling a strike against and picketing or causing the premises to be picketed, should be reversed. Plaintiffs assert that the second portion of the order restraining defendants from preventing or causing to be prevented the delivery of goods, wares and merchandise to the premises, the third portion restraining defendants from calling a strike on the premises or preventing or interfering with any painters, decorators or workmen from working on the premises, and the fourth portion restraining defendants from molesting, harassing or interfering with plaintiff from acting as janitor of the premises, should be affirmed. We agree with defendants that the second and third divisions of the order deal with the results of the first. The purpose of the picketing is to endeavor to influence other union members and the public in their dealings with plaintiffs. We have held that the record in this case does not show that the defendants exercised violence or any unlawful intimidation. The fourth part of the order was not warranted because the defendants did not attempt to molest or interfere with John Naprawa in performing the jani-

tor work in the premises, except by way of picketing, which they had a right to do.

For the reasons stated, the order of the circuit court of Cook county entered on July 3, 1941, is reversed.

*Order reversed.*

HEBEL and KILEY, JJ., concur.