Charles R. Collins et al., Appellants, v. Myles E. Barry et al., Appellees.

Gen. No. 46,817.

First District, First Division.

June 21, 1956.

Released for publication September 12, 1956.

Moore, Ming & Leighton, of Chicago, for appellants; George N. Leighton, of Chicago, of counsel.

Linenthal & Scheyer, of Chicago, for appellees; A. C. Linenthal, of Chicago, of counsel.

JUDGE NIEMEYER delivered the opinion of the court.

Plaintiffs appeal from an order striking their second amended complaint, hereinafter called the complaint, and dismissing their action for a declaratory decree, for an injunction restraining defendants from conducting an unlawful strike and boycott against plaintiffs and for damages arising out of such illegal activities, the court finding that the complaint does not state a cause of action and that no actual controversy exists between the parties, the matters alleged in the complaint being moot.

This suit is brought as a class action. The present plaintiffs are duly licensed funeral directors, embalmers and morticians actively engaged in the undertaking business in Chicago. There are five named plaintiffs. Crook and Cox are sole owners of the respective funeral establishments operated by them. C. B. Waterford, Sr. and C. B. Waterford, Jr., sometimes hereinafter referred to as the Waterfords, are partners, conducting a funeral establishment under the name of C. B. Waterford & Son. Collins is a supervisor and manager, employed by Crook. Crook has five employees, including Collins. The Waterfords have two employees. The class-plaintiffs are partners in or part owners of funeral establishments, or supervisory and managerial employees. The defendants are the president and secretary-treasurer of the Cemetery Workers, Greens Attendants, Institutional Employees' Union,

Local No. 106, of the Building Service Employees' International Union, A. F. of L., hereinafter called the union, individually and as representatives of the defendant union and its members.

On August 1, 1950 the owner-plaintiffs, as members of The Illinois Funeral Home Owners Association, an unincorporated voluntary association, became parties to a collective bargaining agreement, retroactive to July 20, 1950 and expiring January 20, 1952, by the terms of which each employer recognized "the Union as the exclusive bargaining agent of all of his employees, including undertakers, embalmers, funeral directors, apprentices and chauffeurs," and agreed that "All employees shall be members of the Union in good standing." The owner-plaintiffs yielded to the insistence of defendants that managerial and supervisory employees and one of the part owners of or partners in the individual funeral establishments, where more than one person is interested in a funeral establishment, should become members of and pay dues to the union. Accordingly, Collins and Waterford, Jr. became dues-paying members.

In negotiating a new contract in January 1952 plaintiffs acquiesced in the request of defendants for an increase in pay and changes in other terms of the contract, but refused to continue the membership in the union of supervisory and managerial employees and part owners of or partners in individual funeral establishments. Collins and Waterford, Jr. ceased to pay dues March 30, 1952. On May 9th following, defendants called a strike against Crook and the Waterfords and picketed their places of business. May 15, 1952 this suit was commenced. An amended complaint was filed May 21, 1952. During the strike Crook and the Waterfords were deprived of the supplies and services necessary for the conduct of their businesses, and were unable to conduct burials or funeral services in any cemetery employing members of the union. In August

122

1952 Crook and the Waterfords yielded to the demands of the defendants. Collins and Waterford, Jr., resumed payment of their dues. Crook and the Waterfords entered into separate collective bargaining agreements · with the union dated August 18, 1952. No changes were made in the terms of the prior agreement as to union recognition and union security, except to add the provision: "No member of the Union shall be required to perform services in connection with any burial where the persons holding the funeral are nonunion." On August 21, 1952 the strike was terminated and the respective businesses of Crook and the Waterfords were resumed without interruption and interference by defendants.

February 24, 1954 plaintiffs filed a second amended complaint, referred to herein as the complaint. In this complaint there is no allegation of any change in the situation or conduct of the parties after the termination of the strike. In addition to allegations of the foregoing facts, the acts of defendants in directing the strike and picketing against the Waterfords and Crook are detailed and characterized as unlawful secondary boycotts and blacklists against plaintiffs, in aid of an improper labor objective—the unionizing of part owners of, partners in, and supervisory and managerial employees of funeral establishments. Plaintiffs pray for a judgment or decree determining and declaring the rights, liabilities and legal relations of the parties in the premises, for such injunctive relief as is necessary and proper to preserve the rights of the plaintiffs, and for damages in the sum of $50,000 to be awarded the plaintiffs, the Waterfords, Collins and Crook.

 Defendants moved to strike the complaint, dismiss the cause of action, and for judgment in favor of defendants. The motion was allowed. The principal ground urged in its support is that the controversy between the parties had become moot. Defendants alleged that Crook and the Waterfords, in considera-

tion of the union abandoning its strike against them, entered into the above mentioned agreements of August 18, 1952, and thereafter, under date of December 7, 1953, entered into separate collective bargaining agreements with the union, effective as of July 15, 1953 until July 15, 1955, wherein each employer agreed:

"After the effective date of this agreement, all present employees and persons now members of the Union shall remain members of the Union, and all new employees shall become members of the Union and remain in good standing as a condition of employment. The Employer agrees to keep in employment only those persons who are members in good standing of the Union,"

and that at the time these agreements were entered into Collins and Waterford, Jr. were members in good standing in the union. These allegations are not denied. Plaintiffs, however, insist that the agreements were entered into without prejudice to the rights of plaintiffs to have the court determine whether the unionizing of part owners of, partners in, or supervisory and managerial employees of funeral homes is a lawful and proper labor objective. There is nothing in the record to indicate an agreement to this effect. Moreover, a reservation of the rights claimed was beyond the power of the parties to stipulate. As said in LaSalle Nat. Bank v. City of Chicago, 3 Ill.2d 375, 378:

"A case is moot when it does not involve any actual controversy. (Chicago City Bank and Trust Co. v. Board of Education, 386 Ill. 508.) Where the issues involved in the trial court no longer exist, an appellate court will not review a case merely to decide moot or abstract questions, to establish a precedent, or to determine the right to, or the liability for, costs, or, in effect, to render a judgment to guide potential future litigation." (Citations.)

124

The court properly sustained defendants' motion as to Count I of the complaint, wherein plaintiffs prayed for a declaratory decree and for injunctive relief.

In Count II plaintiffs ask for damages arising out of the alleged unlawful acts of defendants in directing the strikes against Crook and the Waterfords. There is nothing in the agreement before us or in defendants' motion to strike the complaint purporting to show a settlement, waiver or abandonment of this claim by plaintiffs. On April 6, 1956 defendants filed a motion to dismiss the appeal, supported by the affidavit of the secretary-treasurer of the union and exhibits attached thereto, on the ground that under the provisions of Article XI, paragraph (c) of a collective bargaining agreement between the union and the State Association of Funeral Home Owners, Inc., of which Crook, Collins and the Waterfords are members, for and on behalf of its employer members, dated September 12, 1955 but not signed until January 4, 1956, each employer renounced and disclaimed any interest whatsoever as a named or class-plaintiff in this cause in the Superior Court of Cook county or in this court on appeal, and released the union and its officers of any and all liability arising out of the subject matter thereof. Decision on this motion was reserved to final hearing.

It appears from the affidavit in support of defendants' motion that during the negotiation of the contract on December 8, 1955, thirty funeral home owners, including Crook and the Waterfords, advised the union by letter that the draft of the proposed collective bargaining agreement, containing paragraph (c) of Article XI, was not acceptable to the signers, and that the list of members of the association (29 in number) in good standing, who were bound by the agreement dated September 12, 1955 signed by the president of the association and submitted to the union February 14, 1956 to be attached to the agreement, did not contain

125

the names of Crook or the Waterfords. Collins, in an affidavit in opposition to defendants' motion, states that throughout the year 1955 to and including April 9, 1956, he and the other plaintiffs herein maintained that they were not bound by the provisions of the contract of September 12, 1955, even though they remained members of the union. In affidavits of members of the association attached as exhibits to the supporting affidavit, one member states positively, and each of three others says, "to the best of affiant's knowledge and belief," that Crook, C. B. Waterford, Sr., and Collins have not "offered protest to said collective bargaining agreement." The power, if any, of the officers of the association to bind members against their will is not shown. The motion to dismiss is denied.

We must therefore consider the sufficiency of the complaint to sustain the claim for damages. No question of the right to maintain a class suit arises, as the claim for damages is limited to Crook, Collins and the Waterfords. There being no allegation of damages sustained by Collins, who is not a funeral home owner, the suit for damages is further narrowed to Crook and the Waterfords. Plaintiffs charge that on May 9, 1952, when the strike and picketing began, the gross monthly business of Crook and the Waterfords, respectively, was $7,500 and $4,000, and that at the termination of the strike and picketing, on August 21, 1952, the gross monthly business of the respective plaintiffs had been reduced to $700 and $300 per month.

There is no charge of violence, threats or intimidation by the pickets. The claim for damages is based on plaintiffs' contention that unionizing of part owners of, partners in, and supervisory and managerial employees of funeral homes is not a proper labor objective, and on charges that during the strike defendants directed members of the union, including supervisors and managers who were employees of cemeteries and burial

associations with whom plaintiffs had maintained amicable, cordial and profitable relations, to refuse to sell graves or render services to plaintiffs; that defendants threatened employees of persons with whom plaintiffs maintained good business relations and who supplied plaintiffs with flowers, food, milk and supplies with loss of employment if they continued to handle or work on any goods, articles, materials or commodities, or perform any services or burial orders taken by the suppliers for plaintiffs; that by threats of strikes and union reprisals defendants coerced suppliers of vaults, caskets, flowers, florist services and other services required and needed by plaintiffs in the conduct of their business to refrain from selling to plaintiffs; that as a consequence of the conduct and acts of defendants, plaintiffs were precluded from engaging in their business as funeral directors, conducting funeral and burial ceremonies in Chicago within the area of the jurisdiction of the union, and suffered the loss of business hereinbefore stated.

The question whether the unionizing of owners, in whole or in part, or supervisory and managerial employees of a business is a proper labor objective, authorizing peaceful picketing, has not been decided by the Supreme Court of Illinois. There are three Appellate Court decisions. These decisions are in conflict, as are the decisions from other jurisdictions cited by the parties. In Baker v. Retail Clerks' International Protective Ass'n, Local Union No. 1000, Eldorado, Ill., 313 Ill. App. 432, the Appellate Court of the Fourth District reversed a decree of the trial court prohibiting the picketing of a small grocery store and delicatessen owned and operated by plaintiffs, husband and wife, without the aid of clerks or help of any kind. The picketing was instituted in aid of the union effort to procure the signatures of plaintiffs to a contract which it had entered into with a number of store own-

127

ers regulating the hours of closing stores, including closing them entirely on Sundays and holidays. In Naprawa v. Chicago Flat Janitors' Union, Local No. 1, 315 Ill. App. 328, the Appellate Court of the First District reversed an order granting a temporary injunction against picketing the apartment building of the plaintiffs, husband and wife, because the husband, who was doing the janitor work, refused to join the union. In Dinoffria v. International Brotherhood of Teamsters & Chauffeurs Local Union No. 179, 331 Ill. App. 129, the Appellate Court of the Second District reversed a decree of the trial court denying a temporary and permanent injunction and claims for damages against the defendant labor union and its secretary-treasurer. Plaintiffs were sole owners of gasoline service stations, which they operated without employees. Defendants insisted on plaintiffs joining the union and signing a contract which provided that owners of gasoline stations employ only union employees, pay specified wages, remain open only certain hours and adhere to prescribed business practices which barred the use of premiums to stimulate sales. The court remanded the cause with directions to enter a decree granting the injunction and to proceed to determine the plaintiffs' damages.

The case of Senn v. Tile Layers Protective Union, 301 U. S. 468, was cited in the Baker and Naprawa cases, sustaining the defendants' position. The case is analogous to the case at bar. The contracting tile layers, like the funeral home owners before us, were operating small businesses, employing few men, with whom the owners worked. Senn conducted his business from his home and employed one or two tile layers and the same number of helpers, as the business required. Because of this condition the union claimed it was necessary for the protection of the individual rights of its members in the prosecution of their trade

128

to require employers agreeing to conduct a union shop to agree that no individual, member of a partnership or corporation engaged in the tile laying business would work with the tools or act as a helper, and that the installation of all materials covered by the contract should be done by the journeymen members of the union. Senn could not qualify as a tile layer under the union rules because he had not served the apprenticeship required by the union. He agreed to employ union men and to pay union wages, but insisted on his right to work as a tile layer or helper as he chose, or conditions required. The trial court denied the injunction to prohibit picketing by the union and dismissed the bill, holding that the rule adopted by the union was reasonable and lawful and for the protection of the members as workers and craftsmen in the industry. The Supreme Court of the state affirmed the decree. On appeal the question before the Supreme Court of the United States was whether the decisions of the state courts, on the facts found, took Senn's liberty or property or denied him equal protection of the laws in violation of the Fourteenth Amendment. Senn's right to work in his own business with his own hands, which the union regarded as harmful to the interests of its members, was opposed to the right of the workers to seek by lawful means to induce Senn to agree to unionize his shop and to refrain from exercising his right to work with his own hands. The judgment of the state Supreme Court was affirmed, resulting in the denial of an injunction against peaceful picketing. We concur in the decision. This conclusion necessarily results in rejection of the decision in the case of Safeway Stores, Inc. v. Retail Clerks' International Ass'n, 41 Cal.2d 567, 261 P.2d 721, the only case cited by plaintiffs in support of their contention against unionizing supervisory and managerial employees. If unionizing of owners of businesses is a proper labor objective, the unionizing of owners' agents is equally proper.

■ Equally untenable is plaintiffs' contention that the union could not lawfully direct its members to refuse to contract with or render services to plaintiffs during the strike. In Montgomery Ward & Co., Inc. v. Franklin Union, Local No. 4, 323 Ill. App. 590, members of the union refused to work on jobs done, in part, by nonunion craftsmen. Although the contract between the employer and union expressly reserved the right to refuse to work on such jobs, the right exists independent of contract, and this fact was recognized by the court when it said (p. 593):

"The employees of Cuneo and others had a right under the terms of the contracts entered into which were attached as exhibits, to refuse to work on jobs which were done in part by non-union craftsmen. If such employees had no right to refuse to work in such circumstances they have little or no rights at all which are of any value to union members. We agree with the statement of counsel for defendants when they say 'that the primary object of the defendants in refusing to work upon or with products that have been worked upon or with by non-union craftsmen was to further their own interests and to secure to themselves whatever improvement in their working conditions had been brought about by their membership in their respective unions. Whatever injury was suffered by plaintiff, if any, by reason of any act of these defendants is merely incidental and not actionable. Fenske Bros. v. Upholsterers Union, 358 Ill. 239.' "

See Iron Molders' Union No. 125 of Milwaukee, Wis. v. Allis-Chalmers Co., 166 Fed. 45 (CCA 7th, 1908).
■ The allegations of the complaint that defendants threatened employees of persons who were suppliers of plaintiff with loss of employment if they continued to handle or work on any goods, articles, materials or commodities, or perform any services or burial orders taken by their employers for plaintiffs,

and that, by threats of strikes and union reprisals defendants coerced suppliers of vaults, caskets, flowers, florist services and other services required and needed by plaintiffs in the conduct of their business to refrain from selling to plaintiffs, are charges of illegal acts by defendants. As to the liability of the individual defendants—the president and secretary-treasurer of the union—in an action at law, if the allegations are proved there can be no question.

█ █ Technical and procedural questions are raised to the liability of the union in this action. The union is a voluntary unincorporated association of many members. It cannot be sued in its association name in an action at law. Cahill v. Plumbers' Gas & Steam Fitters' & Helpers' Local 93, 238 Ill. App. 123. Plaintiffs rely on the Dinoffria case (331 Ill. App. 129) for their right to have their damages set in a court of chancery. The condition on which that right was predicated in the Dinoffria case—the granting of equitable relief—is absent here. Upon the allegations before us we cannot hold that plaintiffs may sue in equity for the damages claimed.

The decree is reversed and the cause remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

FRIEND, P. J. and BURKE, J., concur.