CAHOKIA SPORTSERVICE, INC., *et al.*, Plaintiffs-Appellees, *v.* ILLINOIS RACING BOARD, Defendant-Appellant.—(CAHOKIA DOWNS, INC., *et al.*, Intervenors-Appellees.)

Fifth District    No. 75-230

Opinion filed August 5, 1976.

G. J. MORAN, J., dissenting.

Edward J. Kionka, of Belleville, and Jewel N. Klein, of Chicago, for appellant.

Jenner & Block, of Chicago, and Roach, Keshner & Wyss, of Alton (Robert F. Hanley, Rodney D. Joslin, Barbara S. Steiner, and John T. Roach, of counsel), for appellees Cahokia Sportservice, Inc., and Sports Parking, Inc.

O'Neill and O'Neill, of Alton (Patrick S. O'Neill, of counsel), for intervenors-appellees Cahokia Downs, Inc., and East St. Louis Jockey Club.

McGlynn and McGlynn, of Belleville (Robert E. McGlynn, of counsel), for intervenors-appellees Ogden/Fairmont, Inc., and Southern Illinois Trotting Association.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal from an order of the circuit court of St. Clair County reversing orders of the defendant, the Illinois Racing Board, revoking plaintiffs Cahokia Sportservice and Sports Parking 1974 concessionaire licenses and denying plaintiffs' applications for 1975 concessionaire licenses.

Plaintiffs brought actions for administrative review of the Board's order revoking the 1974 concession license of plaintiff Sports Parking and of the Board's order denying plaintiff Cahokia Sportservice's application for a 1975 concessionaire license under which food and drink would be made available to patrons of the racing meet. The trial court reversed the orders of the Illinois Racing Board.

■■ The general rule is that when a reviewing court has a notice of facts which show that only moot questions are involved the appeal will be dismissed. (*People ex rel. Cairo Turf Club, Inc. v. Taylor*, 2 Ill. 2d 160, 116 N.E.2d 880.) Where the issues involved in the trial court no longer exist, an appellate court will not review the case merely to decide moot or abstract questions (*La Salle National Bank v. City of Chicago*, 3 Ill. 2d 375, 121 N.E.2d 486; *People ex rel. Cairo Turf Club, Inc.*), to establish a precedent, (*Dee-El Garage, Inc. v. Korzen*, 53 Ill. 2d 1, 289 N.E.2d 431), or, in effect, to render a judgment to guide potential future litigation. *La Salle National Bank v. Chicago*; *Collins v. Barry*, 11 Ill. App. 2d 119, 136 N.E.2d 597.

This cause was orally argued in this court on October 23, 1975. The regular 1975 harness racing season in Illinois was over on November 30, 1975 (Ill. Rev. Stat. 1973, ch. 8, par. 37s.7); the 1975 horse racing season in Illinois ended on November 15, 1975; the 1974 seasons ended on those same dates in 1974. The legislature has created the Illinois Horse Racing Act of 1975, effective January 1, 1976, providing for the licensing of concessionaires (Ill. Rev. Stat. 1975, Supp., ch. 8, par. 37—15).

■■ As a result the case has become moot, and since we do not wish to be understood as affirming the trial court this cause should be remanded with direction to dismiss the complaint on the ground of mootness. (*Maywood Park Trotting Association, Inc. v. Illinois Harness Racing Com.*, 15 Ill. 2d 559, 155 N.E.2d 626; *National Jockey Club v. Illinois Racing Com.*, 364 Ill. 630, 5 N.E.2d 224.) Such action is likewise consistent with our Supreme Court's dismissal of an appeal of the Illinois Racing Commission from the circuit court of St. Clair County's decision in 73-MR-1248. On administrative review a similar case entitled *Cahokia Sport Service, Inc. v. Illinois Racing Board*, which the Supreme Court, after briefs were filed and argument heard, found that the issues had become moot and dismissed the appeal without directing the lower court to vacate its decision. However we need not consider the question of *res judicata* or collateral estoppel arising out of the dismissal of that appeal as the parties would have us do, since we do not reach the merits here.

Public interest must be very clear before an exception will be made to the rule that an appeal involving only moot or abstract questions will be dismissed. (*People ex rel. Cairo Turf Club, Inc. v. Taylor*, 2 Ill. 2d 160, 161 N.E.2d 880.) Even if we are to assume that either the Harness Racing Act or the Horse Racing Act or both were sufficiently broad prior to the Illinois Horse Racing Act of 1975 to give the Illinois Racing Board authority to control who parked the vehicles or who funished food and drink, we believe there is little if any public interest in who was licensed to park vehicles in 1974 or in who was licensed to sell food and drink in 1975.

This cause is therefore remanded to the circuit court of St. Clair County with directions to dismiss the complaint for administrative review.

JONES, J., concurs.

Mr. JUSTICE GEORGE J. MORAN, dissenting:
I cannot understand why the majority holds that this case is moot because of the passage of the Illinois Horse Racing Act of 1975.

The principal issues in this appeal are (1) whether a 1972 amendment to the Horse Racing Act (Ill. Rev. Stat. 1973, ch. 8, pars. 37a-37r) and Harness Racing Act (Ill. Rev. Stat. 1973, ch. 8, pars. 37s-37s.34) gave to the Illinois Racing Board the authority to license concessionaires at race tracks, and (2) whether the conviction of the corporation that controlled nearly all the shares of two incorporated applicants for concessionaire licenses, for violation of the Federal conspiracy statute (18 U.S.C. §371), was a proper reason for the Illinois Racing Board to withhold licenses from the applicants after the convicted corporation had ceased to own shares in the applicants.

The appellees contended before the Racing Board, before the trial court and before this court that the Illinois Racing Board had no power to license concessionaires under the 1972 Act. The trial court adopted the contention of appellees and held that the Illinois Racing Board did not have power to license concessionaires under the 1972 Act and did not consider any other issues.

The law is now that the Illinois Racing Board has power to license concessionaires. If that law now governs the law of this case as the majority says, the majority should not affirm the trial court (as it really does in this case) but should rather reverse and remand this case to the trial court to consider the other issues in this case.

The majority also says, "We believe there is little if any public interest in who was licensed to park vehicles in 1974 or who was licensed to sell food and drink in 1975." I disagree. There would be great public interest in whether a corporation that controlled the appellees had been convicted of violation of the Federal Conspiracy Act.

It is clearly in the State's interest and within its police power to closely regulate horse racing. (*People v. Monroe*, 349 Ill. 270, 182 N.E. 439.) The State's interest in protecting the integrity of State-sanctioned horse racing meetings and the Board's responsibility to prevent practices detrimental to the public interest certainly extend beyond those individuals who might directly affect the outcome of a particular race. The integrity of the racing meeting itself is inextricably tied to the integrity of those who furnish employees and derive substantial revenue from the sale of goods at the meeting. The potential for improper influence extends beyond those persons who are simply in an apparent position to influence the outcome of a race, and the Board must in its own best judgment determine where such illegality might arise and act accordingly if it is to meet its responsibilities under the Acts.

Even though the racing seasons in question have passed, this case should not be dismissed as being moot because there is a substantial public interest involved.

There is an exception to the rule that moot cases must be dismissed. A case will not be dismissed as moot if it involves an issue of substantial public interest. (*People ex rel. Wallace v. Labrenz*, 411 Ill. 618, 104 N.E.2d 769.) Among the criteria used in determining whether a sufficient degree of public interest attends an issue for a case not to be dismissed as moot are the public nature of the issue, the desirability of deciding the issue in order to guide public officials in the performance of their duties, and the probability that the issue will recur if it is not decided. *People ex rel. Wallace v. Labrenz; Hill v. Murphy*, 14 Ill. App. 3d 668, 303 N.E.2d 208.

The people of Illinois have a large interest in the proper regulation of

horse racing. This is because the gambling that is associated with horse racing is tolerated on the assumption that administrative regulation can prevent parties of dubious character and questionable motives from capitalizing directly or indirectly on that gambling. The question whether the Board may license corporations that exist only to sell food, liquor, and parking at race tracks therefore has a strongly public quality. Moreover, the question whether the Board may refuse a concessionaire's license to a corporation because of the criminal conviction of a related corporation is equally public in essence. The Board needs answers to these questions in order to know whether it can continue to require licenses of concessionaires at race tracks, and in order to understand what reasons are sufficient for deeming a corporation ineligible for a concessionaire's license. If these questions are not decided in this case, they will undoubtedly arise in future cases brought by appellee concerning the granting of concessionaires' licenses for racing seasons after 1975.

Because of these considerations, the issues in this case are clearly of a substantial public interest, and the case should not be dismissed as moot. See *People ex rel. Wallace v. Labrenz*; *Smith v. Ballas*, 335 Ill. App. 418, 82 N.E.2d 181.