COMMONWEALTH EDISON COMPANY, Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

Third District   No. 77-126

Opinion filed August 17, 1977.

Michael I. Miller, R. Rex Renfrow, III, and Barry S. Kellman, all of Isham, Lincoln & Beale, of Chicago, for petitioner.

William J. Scott, Attorney General, of Chicago (Marvin I. Medintz, Assistant Attorney General, of counsel), for respondents.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Commonwealth Edison Company (hereinafter called Edison) seeks review of an order entered by the Pollution Control Board pursuant to section 41 of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1041). The order appealed from was entered by the Board in a proceeding initiated by the Illinois Attorney General, which directed that Edison obtain a permit from the Environmental Protection Agency (hereinafter called Agency) for a solid waste disposal site operated by Edison, and in such order declared that Edison's operation of the disposal site without a permit was in violation of section 21(e) of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1021(e)). Edison contends that the Board improperly interpreted section 21(e) of the Act by concluding that Edison's disposal operation was not within a statutory exemption from the permit requirement of section 21(e). The Board argues, however, that by reason of the fact that Edison did procure a permit from the Agency, this action to review should be dismissed as moot. The Board also contends that the order properly construed section 21(e) of the Act. We note from the record that Edison, an Illinois public utility engaged in the business of supplying electricity to the public in northern Illinois, has operated a generating station at a site in Joliet, Illinois, since 1921. Lincoln Stone Quarry is contiguous to the Joliet generating station, and in 1962 Edison entered into a long-term lease as to the quarry and since 1962 has been using the Lincoln Stone Quarry as a disposal site for nonputrescible combustion byproducts produced by burning coal at the generating station. The byproducts, which are sometimes commonly described as fly ash, are composed of oxides of

silica, iron and aluminum with a variety of oxides of other metals in trace amounts. Approximately 280,000 tons of these combustion byproducts are deposited in the quarry every year. The material is sluiced to the quarry in three pipes, with about 8,000 gallons of water per minute pumped from the Des Plaines River and used for the sluicing process. Once in the quarry, the solid materials settle leaving a deposit that is either saturated with or covered by water. Since the operation is continuous, there is no wind-blown dust as a result of the disposal of these materials. The supernatant flows by gravity to a sump area in the quarry and is then collected and pumped back into the river. When a portion of the quarry is filled, a top cover of seeded soil is placed over the deposit. Edison has conducted a well-monitoring program for the quarry which indicates that, except for some samples obtained in 1972, which contained excessive amounts of boron, the ground water in the area of the quarry has not been adversely affected by the disposal operation.

On September 19, 1975, the Illinois Attorney General filed a complaint before the Board charging Edison, Lincoln Stone Quarry, Inc., and the First National Bank of Joliet as trustee with violations of sections 21(e) and 21(f) of the Act. Subsequently, an amended complaint was filed and Lincoln Stone Quarry and the First National Bank of Joliet were dropped from the action. The amended complaint charged that Edison violated the Act by operating a solid waste management site at the Lincoln Stone Quarry without an operating permit. On May 24, 1976, Edison and the Attorney General entered into a stipulation of facts, and that stipulation was the only evidence presented to the Board in the proceeding.

On November 10, 1976, the Board found Edison to have violated, and to be presently in violation, of section 21(e) of the Act, but declined to find Edison in violation of section 21(f) of the Act on the ground that no useful purpose would be served by a finding of the additional violation. The Board at that time chose not to impose a penalty upon Edison for the violation.

Although Edison had been seeking an operating permit from the Agency since January 18, 1973, Edison had not received a permit at the time the Board reached its decision on November 10, 1976. Subsequently, on January 26, 1977, the Agency granted Edison a permit to operate the quarry as a disposal site for combustion byproducts.

While Edison, in this action for review of the Board's decision, contends that the Board erroneously interpreted section 21(e) of the Act, the Board argues and contends that the issue presented for review is moot by reason of the fact that Edison procured a permit from the Agency. The Board stresses that no penalty was imposed against Edison by the order of November 10, 1976, and further represents that no action will be taken

against Edison for violations occurring between November 10, 1976, and January 26, 1977, the date on which Edison obtained an operating permit.

■■ As stated by the Illinois Supreme Court in *People v. McCullum* (1977), 66 Ill. 2d 306, 316, 362 N.E.2d 307:

> "When a reviewing court has notice of facts which show that only moot questions or mere abstract propositions are involved, even when such facts are not in the record, the court will dismiss the appeal. (*La Salle National Bank v. City of Chicago* (1954), 3 Ill. 2d 375, 379.)

The Illinois Appellate Court, also, discussed the doctrine of mootness in *Cahokia Sportservice, Inc. v. Illinois Racing Board* (5th Dist. 1976), 41 Ill. App. 3d 69, 70, 354 N.E.2d 83, where the court stated:

> "The general rule is that when a reviewing court has a notice of facts which show that only moot questions are involved the appeal will be dismissed. (*People ex rel. Cairo Turf Club, Inc. v. Taylor*, 2 Ill. 2d 160, 116 N.E.2d 880.) Where the issues involved in the trial court no longer exist, an appellate court will not review the case merely to decide moot or abstract questions (*La Salle National Bank v. City of Chicago*, 3 Ill. 2d 375, 121 N.E.2d 486; [citation]), to establish a precedent, (*Dee-El Garage, Inc. v. Korzen*, 53 Ill. 2d 1, 289 N.E.2d 431), or, in effect, to render a judgment to guide potential future litigation. *La Salle National Bank v. Chicago; Collins v. Barry*, 11 Ill. App. 2d 119, 136 N.E.2d 597."

In the instant case, the Board imposed no penalty for any violations of section 21(e) of the Act occurring prior to the order of November 10, 1976, and the Board now represents, specifically, to this court, that it will not take any action against Edison for any violations occurring between November 10, 1976, and January 26, 1977, the date of issuance of a permit. The permit was issued to Edison for the operation of the disposal site effective January 26, 1977, and it is asserted that such permit prevents the prospective conduct of the disposal operation from being in violation of section 21(e) since the permit is now issued and in effect. In view of the circumstances now presented to this court, we must agree that Edison's petition for review presents only moot questions and that the action should be dismissed.

Edison argues, however, that this court should consider the question presented under the public interest exception to the mootness rule. The Illinois Appellate Court, in declining to consider a moot question involving the Open Meetings Act (Ill. Rev. Stat. 1975, ch. 102, par. 41 *et seq.*), stated in *Hill v. Murphy* (1st Dist. 1973), 14 Ill. App. 3d 668, 670-71, 303 N.E.2d 208:

> "It is true that Illinois recognizes the public interest exception to

the mootness rule. This is, even though a case be moot in the normal sense, if the question is of substantial public interest, the case will be retained and the question decided. [Citation.] The public interest must be very clear to prevent dismissal of an appeal involving only a moot question. [Citation.] In determining whether or not a question is of sufficient public interest to warrant consideration, the rule is that certain criteria must be considered. These are: (1) The public nature of the question; (2) the desirability of an authoritative determination for the future guidance of public officers, and (3) the likelihood of further recurrence of the question. Not merely one, but all three of these conditions must be fulfilled to bring an otherwise moot case within the public interest exception."

From our consideration of the facts, we conclude that the issue is not of such substantial public interest, with sufficient likelihood of recurrence, as would call for our consideration of the issue. As stated in *Dee-El Garage, Inc. v. Korzen* (1972), 53 Ill. 2d 1, 11, 289 N.E.2d 431:

"Where there is no real question involving actual interests or rights for a court of review to consider, the court should not review the case and render an opinion merely for the purpose of establishing precedent."

It must be clearly understood that we are not construing the Board's interpretation of section 21(e) in any manner in this cause, and that we are dismissing Edison's petition for review as moot, without reaching or determining the issue of the propriety of the Board's construction of section 21(e) of the Act. The petition for review in this cause is, therefore, dismissed as moot.

Petition for review dismissed as moot.

STENGEL, P. J., and SCOTT, J., concur.