JOHN ROHDE, Appellant, *vs.* FREDERICKA ROHN, Appellee.

*Opinion filed December 17, 1907—Rehearing denied Feb. 6, 1908.*

1. MORTGAGES—*when holders of trust deeds have equitable liens.* Where the owner of land falsely represents to each of the purchasers of notes that the trust deeds whereby they are secured are first liens upon his property, each of such purchasers has, as against such owner, an equitable lien upon the property, though neither deed is, in fact, a valid first lien.

2. SAME—*party is not charged with constructive notice of conveyances outside the chain of title.* One who purchases a note secured by a trust deed is not charged with constructive notice of any rights by the record of a trust deed made by a stranger to the title, and who had, in fact, no interest therein, purporting to cover the same property, since he is not bound to search outside of the chain of title of the person who made the trust deed so purchased.

3. SAME—*what is negligence by a person buying a trust deed.* Where the records show a trust deed securing a note transferable by delivery, and a subsequent conveyance by the grantor to the trustee which merges the legal and equitable titles in the trustee but shows no release of the trust deed, it is negligence for a person to purchase a note secured by another trust deed on the property without requiring the original note and trust deed to be released,

thus leaving it in the power of the trustee to fraudulently re-sell the original note and trust deed.

4. SAME—*negligence postpones priority as between equitable lienholders.* As between two purchasers of notes and trust deeds, both of whom were defrauded by the seller so that they are equitable mortgagees only, negligence of the one whose lien is prior in point of time which enabled the seller to perpetrate the fraud upon the other is sufficient to postpone his equity to that of the other.

5. NOTICE—*notice of a specific claim is not notice of different one.* Notice to the purchaser of a note transferable by delivery and secured by a recorded trust deed, that the extension of time of payment was by a certain person as purported assignee of the maker of the note, which was uncanceled, is not notice that such person has executed a trust deed upon the property which has been recorded, where such person is a stranger to the record title, which, if examined, would have shown the original trust deed and a subsequent conveyance of the legal title to the trustee, but no conveyance by the trustee nor any release of the trust deed.

CARTER, J., dissenting.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

JOHN STELK, (JAMES S. MURRAY, of counsel,) for appellant.

GEORGE F. BARRETT, (CHARLES V. BARRETT, of counsel,) for appellee.

Mr. CHIEF JUSTICE HAND delivered the opinion of the court:

The appellant, John Rohde, filed a bill in chancery in the superior court of Cook county on the 27th day of July, 1903, against the appellee, Fredericka Rohn, and others, to foreclose a trust deed bearing date September 22, 1892, given by Paul F. C. L. Schmidt and wife to Charles C. Schumacher upon certain real estate located in the city of Chicago to secure the payment of the promissory note of

Schmidt for the sum of $2500, of even date with said trust deed, due and payable two years after its date, to the order of Schmidt, with interest at six and one-half per cent per annum, which promissory note was endorsed by Schmidt, and upon which promissory note there had been paid on the principal $500, which trust deed was acknowledged on October 10, 1892, and recorded in the recorder's office of Cook county on October 11, 1892. The appellee answered said bill and filed a cross-bill, in which she alleged she was the owner of a note for the sum of $1600, bearing date February 27, 1900, signed by one Frank M. Dimond and by him endorsed, which promissory note was secured by a trust deed on the premises described in the original bill, bearing date February 27, 1900, from said Frank M. Dimond to Charles C. Schumacher, which trust deed was acknowledged February 28, 1900, and recorded in the office of the recorder of deeds of Cook county on March 16, 1900, which Dimond trust deed, it was alleged, though subsequent in date to the Schmidt trust deed, was a prior and superior lien to said Schmidt trust deed upon said premises. The appellant filed an answer to said cross-bill, and replications were filed to the answers to said original and cross-bills, and the case was referred to a master to take the proofs and report his conclusions. The master filed a report, in which he found that the Schmidt note and trust deed were a prior and superior lien on said premises to the Dimond note and trust deed, and recommended that a decree be entered in said cause in accordance with said finding. The court sustained exceptions to said report in so far as it found that the Schmidt note and trust deed were a prior and superior lien to the Dimond note and trust deed, and entered a decree establishing a lien upon said premises in favor of the appellee upon the Dimond note and trust deed for the sum of $1833.38 and in favor of the appellant upon the Schmidt note and trust deed for the sum of $2311.18, and directed that the lien of appellee be satisfied prior to

the lien of appellant, and ordered that said premises be sold to satisfy said liens. From that decree the appellant prosecuted an appeal to the Appellate Court for the First District, where the decree of the superior court was affirmed, and a further appeal has been prosecuted to this court.

The facts in this case are not in controversy. It appears that Paul F. C. L. Schmidt, on the 22d day of September, 1892, was the owner in fee of lot 40, in block 3, in S. J. Walker's dock addition to the city of Chicago; that on that date he borrowed of Charles C. Schumacher the sum of $2500 and executed his promissory note for that amount, bearing six and one-half per cent interest per annum, payable to the order of himself two years after date, which note was by him endorsed and the payment thereof secured by a trust deed on said premises made by him to Charles C. Schumacher, bearing even date with said note, which trust deed was acknowledged and recorded and which note and trust deed were delivered by him to Schumacher, and that $500 was paid by Schmidt on the note, and that Schumacher afterwards sold and delivered the note and trust deed to one Florence McCarthy; that on April 21, 1898, Schmidt and wife conveyed said premises to Schumacher, subject to said trust deed, for the sum of $150. The deed from Schmidt and wife to Schumacher was recorded on May 4, 1898, and Schumacher paid the interest on the said note until February 20, 1900, when he paid to Florence McCarthy the full amount thereof and Florence McCarthy delivered the said note and trust deed to Schumacher. On February 27, 1900, Schumacher procured one Frank M. Dimond, a clerk in his office, to execute his note for the sum of $1600, payable to the order of himself, three years after its date, with interest at six per cent per annum, and to endorse the same, and to execute a trust deed to secure said note to Schumacher, as trustee, on the premises covered by the Schmidt trust deed, in which premises Dimond had no interest but which premises were then owned by Schumacher, and said trust deed

was recorded March 16, 1900, and said note and trust deed were delivered by Dimond to Schumacher, and on September 10, 1900, Schumacher sold the Dimond note and trust deed to Rudolph Rohn, representing to him that they constituted a first lien upon the property described in said trust deed. Rudolph Rohn died, and said note and trust deed, in the distribution of his estate, became the property of the appellee, Fredericka Rohn. In October, 1900, Schumacher had $4000 of the money of the appellant, John Rohde, in his hands which he had collected upon notes held by him belonging to Rohde, and on October 18, 1900, he sold and delivered to John Rohde, in part payment of said sum of $4000, the Schmidt note and trust deed, and represented to Rohde that they were a first lien on the premises described in said trust deed. The said note at that time bore an endorsement dated September 22, 1900, signed, "Frank M. Dimond, Assignee of Paul F. C. L. Schmidt," purporting to extend the time of payment of said note three years from that date. He also delivered to Rohde six interest notes, and a paper signed "Frank M. Dimond, Assignee of Paul F. C. L. Schmidt," purporting to extend the payment of said note and trust deed three years from September 22, 1900. Schumacher paid the interest due upon the Schmidt note and trust deed and upon the Dimond note and trust deed until in May, 1903, when he died. Neither Rohde nor Rudolph Rohn had any knowledge of the transaction of the other with Schumacher, or that the securities held by them, respectively, were other than they were represented by Schumacher to be at the time he sold and delivered said notes and trust deeds to them, respectively, and did not obtain any knowledge thereof until after the death of Schumacher and until about the time this bill was filed.

It thus appears that Rudolph Rohn obtained the Dimond note and trust deed from Schumacher on September 10, 1900, and that John Rohde obtained the Schmidt note and trust deed from Schumacher on October 18, 1900, and the

only question to be determined upon this record is, which of said notes and trust deeds constitutes the prior lien upon said premises.

At the time the Dimond note and trust deed were executed by Dimond, and at the time said note and trust deed were sold to Rudolph Rohn by Schumacher, Dimond had no interest in the premises covered by said trust deed, and at the time the Schmidt note and trust deed were sold and delivered to Rohde by Schumacher the Schmidt note and trust deed had been paid and satisfied and the trust deed had become merged in the fee title which was then held by Schumacher, and neither of said trust deeds was a lien upon said premises other than upon the ground that Schumacher, the owner of the fee to said premises, had represented to Rudolph Rohn and Rohde that the trust deeds which he sold and delivered to them, respectively, were first liens upon said premises, and he, in equity, was estopped to deny that said representations were true, and as against him said trust deeds would be held to create valid liens upon said premises. The Appellate Court held, and such holding is conceded by the counsel for the respective parties to be correct, that the appellant and appellee each held an equitable mortgage on said premises, and that court affirmed the decree of the superior court upon the ground that the equities of the parties being equal, and appellee's equity being the prior one in point of time, it should prevail.

The appellant contends the Appellate Court erred in affirming the decree of the superior court, as it is said the equities of the parties are not equal, and urges the equities of the appellant are superior to those of the appellee, and for that reason the maxim invoked by the Appellate Court ought not to be applied in the case at bar. The appellant's main contention is, that he did not have constructive or actual notice of the existence of the Dimond note and trust deed at the time he purchased the Schmidt note and trust deed, and for that reason he could not protect himself

against the Dimond note and trust deed, while, he says, Rudolph Rohn did have constructive notice of the Schmidt note and trust deed at the time he purchased the Dimond note and trust deed, and that he could have protected himself against the Schmidt note and trust deed by insisting that the trust deed be released of record and the note canceled, and as he failed so to do and allowed said Schmidt note and trust deed to remain unreleased of record and uncanceled in the hands of Schumacher, who was thereby enabled to negotiate it to Rohde, he was guilty of such negligence as to destroy his equity as against the appellant, and that by reason of such negligence appellee's lien should be postponed to the lien of the appellant.

At the time the appellant purchased the Schmidt note and trust deed, Schumacher represented to him they were a first lien upon said premises. That representation was false. Schumacher, however, made the same representation to Rudolph Rohn when he purchased the Dimond note and trust deed, and the one had the same right to rely upon the statement of Schumacher that the other had. They were each bound, however, to take notice of such matters as were of record which affected the trust deeds which they were about to purchase, and they were bound by whatever notice the record disclosed, even though they did not examine the record. Had Rohde examined the record he would have found that the title to the property covered by the Schmidt trust deed was at the date of the trust deed in Schmidt, and that Schmidt executed the trust deed to Schumacher, and that Schmidt subsequently conveyed the title to said premises to Schumacher. These facts would not, however, have been notice to Rohde that the Schmidt note and trust deed were not a first lien upon the premises, as Schumacher represented to him they were, as Schumacher was only a trustee in the trust deed, and the note was not necessarily in the hands of Schumacher as owner, as it was payable to the order of Schmidt and by him endorsed.

It is said, however, that an examination of the record would have disclosed the existence of the Dimond note and trust deed, and that appellant was bound by what the record showed with reference to the Dimond trust deed, whether he examined the record or not. If he had examined the record and found the Dimond trust deed he would only have been advised that Dimond, who was a stranger to the title and had no interest in the land, had placed a trust deed upon the premises covered by the Schmidt trust deed. We think it clear, however, that Rohde was not bound to look for conveyances outside of the chain of title of Schmidt, who executed the trust deed, and that, regardless of what the effect would have been had he examined the record and found the Dimond trust deed, he did not receive constructive notice of the Dimond trust deed from the fact that said trust deed was recorded. (*Irish* v. *Sharp,* 89 Ill. 261; *Carbine* v. *Pringle,* 90 id. 302; *Miller* v. *Larned,* 103 id. 562; *Kerfoot* v. *Cronin,* 105 id. 609.) In the *Irish case* it was held that the record of a mortgage given by one having only an equitable title under a bond for a deed which was not recorded was not notice to a subsequent purchaser of the legal title from one in possession of the land, as such purchaser's title was not derived through the title of the mortgagor, and that he did not take subject to the mortgage, although it was recorded. And in the *Kerfoot case* it was held that to require a party to examine every record that might possibly affect real estate before he could be protected in taking title to or a lien upon real estate would be to place such a burden upon purchasers of real estate or encumbrances as to practically put an end to all transactions of that kind. And in the *Miller case,* that a person buying a note secured by a trust deed is under no obligation to search the record before buying, to ascertain what conveyances the grantee in the trust deed has made since the making and recording of the deed of trust; that the law charges such purchaser with notice of conveyances in the direct line of

the title he is buying, and nothing more. We therefore conclude that the appellant did not have constructive notice of the Dimond trust deed at the time he purchased the Schmidt note and trust deed.

The question then arises, did appellant have actual notice of the existence of said note and trust deed, or notice of facts which, if followed up, would have disclosed to him the existence of said Dimond note and trust deed? The only facts of which he had notice which could have put him on inquiry were, that the extension upon the Schmidt note, the coupon notes and the extension contract were signed "Frank M. Dimond, Assignee of Paul F. C. L. Schmidt." If the fact had been true that Dimond was the assignee or grantee of Paul F. C. L. Schmidt, the Schmidt note and trust deed would have been just what Schumacher told Rohde they were, viz., a first lien upon the said premises. Where a party is notified of a specific claim, such notice will not put a party upon inquiry as to some other or different right. (21 Am. & Eng. Ency. of Law,—2d ed.— p. 587.) In *Bates* v. *Gillett*, 132 Ill. 287, Bates informed parties who were about to purchase property from his sons that the will of their grandfather, under which the sons claimed, was invalid and that he claimed rights to the property through the mother of his sons, and the court held, Bates having based his claim upon the invalidity of the will, which claim proved unfounded, the purchaser was bound to look no further. We think, therefore, the appellant did not have actual notice of the existence of the Dimond note and trust deed, or of any facts which bound him to investigate the connection of Dimond with the title to the land covered by the Schmidt trust deed. On the contrary, if Rudolph Rohn had gone to the record to investigate the title of Dimond, what would he have found? First, that Dimond had no title to the land; second, that the Schmidt trust deed was of record unreleased; and third, that the title to the land was in Schumacher; and if he had called

upon Schumacher to produce the Schmidt note and trust deed he would have learned it was in Schumacher's possession, unreleased and uncanceled. Rudolph Rohn being required, in law, to take notice of these facts prior to the time he purchased the Dimond note and trust deed, clearly it was negligence on his part to part with his money by purchasing the Dimond note and trust deed, when it appeared Dimond, the maker of the note and trust deed, had no title to the land covered by the trust deed, and that there was outstanding and uncanceled a note which was transferable by delivery, secured by a trust deed, unreleased, upon the property covered by the Dimond trust deed in the hands of Schumacher. Mr. Pomeroy, in section 688 of his work on Equity Jurisprudence, (2d ed.) in discussing the question of priorities in equity, says: "The third, and in its practical effects by far the most important, rule is, that a party taking with notice of an equity takes subject to that equity. The full meaning of this most just rule is, that the purchaser of an estate or interest, legal or equitable, even for a valuable consideration, with notice of any existing equitable estate, interest, claim or right in or to the same subject matter, held by a third person, is liable in equity to the same extent and in the same manner as the person from whom he made the purchase. His conscience is equally bound with that of his vendor, and he acquires only what his vendor can honestly transfer." True, Rudolph Rohn did not go to the record, but he was bound by the facts which the record disclosed and by what the information there obtained would have led to if followed up. He purchased the Dimond note and trust deed, and negligently, as we think, permitted the Schmidt note and trust deed to remain in Schumacher's hands uncanceled and unreleased, the result of which was that Schumacher, subsequent to the purchase of the Dimond note and trust deed by Rudolph Rohn, defrauded the appellant by transferring to him the unreleased and uncanceled Schmidt note and trust deed.

There are a number of cases that hold, as between two equitable mortgagees, negligence is sufficient to postpone the one who is prior in time to the equity of the other. (*Farrand* v. *Yorkshire Banking Co.* L. R. 40 Ch. Div. 182; *Rice* v. *Rice,* 2 Drewry, 73; *Hume* v. *Dixon,* 37 Ohio St. 66. See, also, 2 Pomeroy's Eq. Jur. sec. 732,—3d ed.—and notes.) In *Farrand* v. *Yorkshire Banking Co. supra,* Turner made to Prince a loan of £200 to enable him to complete the purchase of certain lands. Prince gave him a bond, and agreed, as soon as the purchase was completed, to deposit the title deeds with Turner. This he did not do but deposited them with the banking company as security for a loan, and the court held, although Turner's equity was first in time, that it was postponed to that of the banking company by reason of the fact that Turner had negligently permitted Prince to deal with the property as his own. The court said: "When equities are equal in other respects the earlier in date is preferred, but when equities are not equal, then the priority of date is easily got over,—at any rate, as between equitable encumbrancers." And in *Rice* v. *Rice, supra,* it was said: "In a contest between persons having only equitable interests, priority of time is the ground of preference last resorted to,—*i. e.,* that a court of equity will not prefer the one to the other on the mere ground of priority of time, until it finds, upon an examination of their relative merits, that there is no other sufficient ground of preference between them, or, in other words, that their equities are in all other respects equal, and that if the one has on other grounds a better equity than the other, priority of time is immaterial." And in *Himrod* v. *Gilman,* 147 Ill. 293, this court said (p. 303): "It is only where the equities are equal that he whose equity was first obtained has the better right."

These authorities appear to proceed upon the ground that when one, only, of two equitable encumbrancers has been guilty of negligence which has contributed to bring

about the situation in which the parties find themselves, the party guilty of negligence will be postponed, in the enforcement of his rights, to the rights of the party who is free from negligence.  Here, Rudolph Rohn, by not insisting that the Schmidt note and trust deed be canceled and released, enabled Schumacher to foist upon Rohde the uncanceled Schmidt note and trust deed.

In view of all the facts found in this record we are impressed with the fact that the appellant has the superior equity, and that the lien of the Schmidt note and trust deed, which appeared of record to be a valid lien upon said premises at the time it was purchased by Rohde, should be held to be prior and superior to that of the Dimond note and trust deed.

The judgment of the Appellate Court and the decree of the superior court will therefore be reversed and the cause remanded to the superior court for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*

Mr. JUSTICE CARTER, dissenting.