Nicholas Wermes, Appellee, v. Fred J. McCowan et al., Appellants.

Gen. No. 9,075.

Opinion filed September 3, 1936.

MIGHELL, ALLEN & LATHAM and WILLIAM F. FOWLER, of Aurora, for certain appellants; EVERETT JORDAN and FRED T. DEAN, both of Aurora, of counsel.

KAMES & FELDOTT, of Aurora, for appellee; JOSEPH J. FELDOTT and D. J. PEFFERS, of Aurora, of counsel.

MR. PRESIDING JUSTICE HUFFMAN delivered the opinion of the court.

Fred J. McCowan and wife entered into contract with Christ Seidel and wife to purchase an improved lot in the city of Aurora, for the sum of $12,100. McCowan and wife made payments to Seidel under the above purchase agreement until they had reduced it to the sum of $3,995. During the above period of time, Seidel and wife purchased some land from appellee. To secure appellee to the extent of $1,200 upon the purchase price of such land, Seidel and wife executed to appellee a mortgage on the lot upon which McCowan and wife had the purchase agreement. In order to keep the record straight, Seidel and wife had McCowan and wife sign the mortgage on this lot.

On January 28, 1931, appellant Elmer G. Magill, secured a judgment against McCowan and wife, upon which judgment the sum of $438.75 remained due at the time of the decree herein. On January 31, 1931, appel-

lant Royston & Company secured a judgment against McCowan and wife upon which the sum of $966.25 remained due at the time of the decree herein. During the year 1931, McCowan and wife were delinquent in making their payments to Seidel and wife on the lot under the contract of sale. They were desirous of completing the entire balance of the purchase price. In addition to this, Seidel was wanting the money in order that he might discharge his debt to appellee.

McCowan and wife made arrangements with appellee to advance $3,000 for them to Seidel and wife toward payment of the $3,995 then remaining due upon said lot. They had enough cash from other sources to complete the purchase price. Pursuant to the above situation, the parties all met at the office of the attorney on Aug. 8, 1931. Those present were the attorney and his secretary, the appellee, McCowan and wife, Seidel and wife, and Mr. McCowan's mother. At this meeting, appellee advanced the $3,000, which was paid to Seidel and wife, and McCowan and wife advanced enough additional cash to complete payment of the purchase price upon the lot. At this time McCowan and wife executed to appellee their notes for $3,000, secured by trust deed upon said lot. The entire transaction took place in the presence of all the above named persons, and at the one meeting.

On March 21, 1935, appellee filed his bill to foreclose against the lot under the above trust deed. Appellants Magill and Royston & Company answered, setting up their respective judgments and claiming the same to be prior liens to appellee's lien against said lot. Appellee took the position that his mortgage was a purchase money mortgage and therefore not subject to the liens of the said judgment creditors. The matter of appellants' judgments was stipulated between the parties. The court heard the cause. Oral testimony was offered on behalf of appellee only. The court found the issues with appellee and decreed that the judgment liens of

the appellants Magill and Royston & Company were subordinate to appellee's, but prior to all other liens. Said judgment creditors have prosecuted this appeal from the above decree.

Appellants urged three reasons why appellee's mortgage should not be considered as a purchase money mortgage. They first urge the deed and mortgage were not simultaneous acts; second, that their judgments were liens on McCowan's equitable interest and rights under the sales contract; and third, that the money advanced by appellee was used to pay a pre-existing indebtedness. We will discuss the above positions of appellants, in the order named.

Appellants state that they consider the best case in this State in support of their position that the acts were not simultaneous, to be that of *Small v. Stagg,* 95 Ill. 39. In this case the court in discussing the deed to the property and the trust deed claimed to have been given to secure purchase money, makes the following statement: "The two were separate and distinct acts, and there is no testimony in the record from which it can be presumed that the three parties intended to have the two transactions bear any relation whatever to each other." (p. 44.) Under such circumstances certainly no claim to a purchase money mortgage could be maintained. In the above case the rule is recognized, "that where a person purchases a tract of land and secures a deed therefor, and at the same time executes a mortgage on the property to secure the purchase money, an existing judgment against the mortgagor does not become a lien as against the mortgage." (p. 44.) In *Harrow v. Grogan,* 219 Ill. 288, at p. 291, it is said: "that where, on the purchase of land, a deed is executed by the vendor and a mortgage on the land purchased is executed by the purchaser, and both conveyances are acknowledged and recorded at the same time, the presumption is that they were executed simultaneously

and that the mortgage was intended to secure the purchase money." It is further stated that the court would presume, from the fact that a deed and mortgage were made on the same land and on the same day, that the mortgage was a purchase money mortgage. It is recognized in the above case, p. 292, that the presumption that a mortgage executed by the vendee on the same day upon which the land is conveyed, is a purchase money mortgage, is subject to rebuttal. However, nothing appears in the record in this case to rebut the presumption that appellee's mortgage is a purchase money mortgage. It was made and executed at the same time and place as the deed to the lot. In addition to the presumption prevailing, is the testimony of the witnesses for appellee, whose testimony stands undisputed, and supports his contention that his mortgage is a purchase money mortgage.

With reference to appellants' second point urged, that their judgments were liens on McCowan's equitable interest in the lot under the contract of sale, there is no dispute. However, their rights under their liens would have been no greater than McCowan's rights under the sales contract. The only interest or right that McCowan had under such contract was the equitable right to enforce the same providing he had performed it on his part. Thus we see that appellants under such a lien, would find the same subject to the payment of the unpaid purchase price upon said lot. Until payment of the purchase price, it is manifest that specific performance could not be had. Therefore appellants' rights are in no way injured or impaired. *Hayes v. Carey*, 287 Ill. 274, 277.

With reference to the third point urged by appellants, that the $1,200 previously advanced by appellee to Seidel and wife, was a pre-existing debt of McCowan and wife, and therefore the money advanced by appellee on the date of the delivery of the deed and mort-

gage, was advanced for a pre-existing indebtedness, we cannot agree. This position is not supported by the evidence; but on the contrary, the evidence refutes such a claim, and clearly establishes the fact that the $1,200 was due from Seidel and wife to appellee upon the purchase price of land bought by them from appellee, and although McCowan and wife were caused to sign the mortgage with Seidel and wife, that no part of the debt was that of McCowan and wife.

The rule that a mortgage given at the time of the purchase of real estate, to secure the payment of purchase money, or the balance thereof, has preference over judgments and other debts of the mortgagor, to the extent of the land purchased, is announced in *Curtis v. Root,* 20 Ill. 53; *Roane v. Baker,* 120 Ill. 308, 314; *Harrow v. Grogan, supra,* and such other cases in this State as deal with this subject. It is stated in *Curtis v. Root, supra,* at p. 58, that, "In point of right and principle, it can make no difference whether the mortgage is given to the vendor for the purchase money, or to another who actually advances the means to pay the purchase money to the vendor."

Some States provide by statute with reference to the above rights of a mortgagee of a purchase money mortgage. In other States, such precedence is given to purchase money mortgages without the aid of any statute. Among the latter group is this State. We consider the true test as to when a mortgage is a purchase money mortgage, is not whether it is executed to the vendor, but whether the proceeds are to be used to apply on the purchase price. The rule as generally stated is that, to give a purchase money mortgage a precedence, it must have been executed simultaneously, or at the same time, with the deed of purchase. The reason usually assigned for this doctrine is the technical one of the mere transitory seisin of the mortgagor, rather than the superior equity which the mortgagee has, to be paid

the purchase money of the land before it shall be subjected to other claims against the purchaser. However, it is evident, both upon principle and authority, that what is meant by this statement of the rule is not that the two acts—the execution of deed of purchase and the execution of the mortgage—should be literally simultaneous. This would be impossible. Some lapse of time must necessarily intervene between the two acts. We believe that an examination of the cases will show the real test is not whether the deed and mortgage were in fact executed at the same instant, but whether they were parts of one continuous transaction, and so intended to be by the parties, so that the two instruments should be given contemporaneous operation in order to promote and carry out the intention of the parties.

We thus find the various authorities on the question of purchase money mortgages falling into two groups: The one, based upon the position that the execution of the deed and the mortgage being simultaneous acts, the title to the land does not for a single moment, rest in the purchaser, but merely passes through his hands and vests in the mortgagee without stopping in the purchaser, and that during such instantaneous passage, the judgment lien cannot attach to the title; while the other, is disposed to consider the superior equity which the mortgagee might be said to have for the purchase money which he has advanced. This state has apparently adopted the theory of transitory seisin. However, under either position the result is the same, and purchase money mortgages given precedence over existing judgments against the mortgagor.

It was stipulated that appellant Magill had $438.75 due him on his judgment, at time of trial of this case. The court so found by its decree. However, the attorneys who prepared the decree inadvertently caused this sum to be written as $187.25 in that portion of the de-

cree providing for the payment of his lien. To this extent, the decree is in error. That part of the decree of the trial court providing how the master shall make disbursements from the proceeds of the sale, which reads: "that out of any balance he pay to the defendants Elmer G. Magill, the sum of One Hundred Eighty Seven & 25/100 Dollars, together with legal interest thereon from the date of this decree . . ."; is modified and amended to read as follows: "that out of any balance he pay to the defendants Elmer G. Magill the sum of Four Hundred Thirty Eight & 75/100 Dollars, together with legal interest thereon from the date of this decree to the date of sale."

The decree as modified and amended is hereby affirmed.

*Decree modified and amended, and affirmed as amended.*