Robert Schwind *et al.*, Plaintiffs-Appellants, *v.* Marvin Mattson *et al.*, Defendants-Appellees.

---

Chicago Federal Savings and Loan Association *et al.*, Plaintiffs-Appellants, *v.* Marvin Mattson *et al.*, Defendants-Appellees.

(No. 58382; ▮▮▮▮▮▮)

First District (2nd Division)—January 16, 1974.

*Rehearing denied February 14, 1974.*

Thomas William Burke, of Chicago, for appellants.

Block, Levy & Becker, of Chicago (Alvin R. Becker, of counsel), for appellees.

Mr. PRESIDING JUSTICE HAYES delivered the opinion of the court:

On 16 July 1971, Chicago Federal Savings and Loan Association instituted an action in the Circuit Court of Cook County, Chancery Division (71 CH 1416), to foreclose its mortgage on the residence of Marvin and Dorothy Mattson. The decree of foreclosure issued on 16 December 1971 and the property was sold on 1 February 1972. At the sale of the property, Chicago Federal was the highest bidder, bidding $34,807. That figure was the amount of the balance of the debt secured by the mortgage. The Mattsons' statutory right of redemption was to expire on 1 August 1972, that date being six months from the date of sale. Ill. Rev. Stat. 1971, ch. 77, par. 18(e).

On 28 March 1972, Robert and Margaret Schwind, as buyers, signed an offer to purchase the Mattsons' residence for $48,500, which offer was accepted in writing by the Mattsons. The Schwinds gave the Mattsons earnest money in the amount of $4,850. The date set for closing was 24 June 1972. The Schwinds were not aware of the foreclosure when they signed the offer to purchase the Mattson residence. Thereafter, the Schwinds hired Thomas William Burke as their attorney.

On 25 April 1972, Attorney Burke received a tract index title report from Chicago Title and Trust Co. disclosing the existence of the foreclosure and the issuance of the Sheriff's certificate of sale to Chicago Federal. The report also disclosed certain other junior liens on the property, which liens had also been foreclosed.

By registered letters dated 3 May and 8 May 1972, Attorney Burke demanded of the Mattsons that the earnest money paid them be placed in escrow. The Mattsons did not comply with these demands. Thereafter, on 16 May 1972, the Schwinds instituted an action in the Circuit Court of Cook County, Chancery Division (72 CH 2802), before Judge Mejda seeking a mandatory injunction compelling the Mattsons to place the earnest money in escrow. The Mattsons did not appear or defend and, on 19 May 1972, the trial court ordered the Mattsons to place the earnest money in escrow.

The Mattsons informed Attorney Burke on 7 June 1972 that they would vacate the residence prior to the closing date of 24 June 1972. On 12 June 1972 the Schwinds and John Pinger, Mrs. Schwind's father, entered into an escrow agreement to purchase an assignment of the Certificate of Sale of Mattsons' property from Chicago Federal. The

assignment was contingent upon the Mattsons failing to exercise their right of redemption on or before 1 August 1972. The purchase price of the assignment was approximately $36,200. The Schwinds did not inform the Mattsons of this agreement prior to 1 August 1972. Neither was Chicago Federal advised by the Schwinds or Pinger that the Schwinds had an agreement with the Mattsons.

On 20 June 1972, the Mattsons vacated the residence and on 24 June 1972, Mr. Mattson called Mrs. Schwind. He was told to talk to Attorney Burke. Throughout the month of June, Mattson had been attempting to call Attorney Burke without success. On 27 June 1972, Mattson telephoned Attorney Burke requesting him to call the Mattsons' lawyer regarding closing the sale.

In early July of 1972, the Mattsons' attorney called Attorney Burke to tell him that the residence had been vacated and that the Mattsons were prepared to deposit the earnest money in escrow if Attorney Burke and the Schwinds were ready to consummate the deal. Attorney Burke merely replied that he would get back to him.

In late July of 1972, Mr. Mattson went to the office of the attorney for Lincoln National Bank. Lincoln National Bank was the holder of a second mortgage on the Mattson residence in the amount of $4,800 and was a junior decree creditor of Mattson. That attorney suggested a way in which the Mattsons might carry out their contract with the Schwinds. His solution was a three-way escrow between the Mattsons, the Schwinds, and Lincoln National Bank. Lincoln would advance funds for a redemption on behalf of the Mattsons, since the contract price of $48,500 with the Schwinds was far in excess of the redemption price of $34,807. This arrangement would have allowed Lincoln to be paid, as well as leaving about $8,900 for the Mattsons and other junior decree creditors.

On 1 August 1972 in 71 CH 1416 the Mattsons presented a petition to Judge Covelli seeking to extend the right of redemption to 31 August 1972 in order to keep viable the Lincoln National Bank's plan. That petition was granted. Thereafter, the attorney for the Mattsons telephoned Attorney Burke to inform him that the period for redemption had been extended. He further informed him that Mattson had a new buyer, but that Mattson would still sell to the Schwinds, if they so desired. Attorney Burke replied that he would serve the Mattsons' attorney with some papers the following day.

The next day, 2 August 1972, Chicago Federal, pursuant to the agreement of 12 June, delivered the certificate of sale to the Schwinds and Pinger. A Sheriff's deed was then issued to the Schwinds and Pinger. The deed was recorded on 3 August 1972.

On 4 August 1972, the Schwinds, as assignees of Chicago Federal, filed

a motion in 71 CH 1416 for the vacation of Judge Covelli's order of 1 August 1972 on the ground that the Mattsons' petition should have been presented to Judge Mejda (who had taken over the case upon the death of Judge Paschen). Judge Covelli vacated his order. On the same day, Judge Mejda entered an order restraining all parties from taking any further action regarding the Mattson property until a hearing could be had.

On 10 August 1972, the Mattsons filed a counterclaim in 71 CH 1416 against the Schwinds praying that the Schwinds be adjudged to be constructive trustees of the legal and equitable title to the property in question, that the Mattsons be allowed to exercise the right of redemption, and further that the Mattsons recover judgment against the Schwinds in the amount of $8,846 (the amount which, under the Lincoln National Bank plan, would have accrued to the Mattsons for their benefit and that of the junior decree creditors other than the bank). On the same day, the Schwinds and Pinger filed a petition for a writ of assistance in 71 CH 1416, and in 72 CH 2802 filed a petition for a judgment against the Mattsons in the amount of the earnest money. In addition, the Schwinds filed an answer to the Mattsons' counterclaim.

On 25 August 1972, after a trial in which 71 CH 1416 and 72 CH 2802 were consolidated, Judge Mejda entered an order in 71 CH 1416 setting aside the sheriff's deed dated 2 August 1972, and extending the time for Mattsons' redemption from the sheriff's sale on 1 February 1972, from 1 August 1972 until 15 September 1972. The decree further provided, in part, that, if the contract of 28 March 1972 between the Mattsons and the Schwinds was consummated, the contract was to be consummated through an existing escrow at Chicago Title and Trust Co. No express disposition was then made of the Schwinds' petition in 72 CH 2802 for a judgment against the Mattsons in the amount of the earnest money, but Judge Mejda remarked orally that he thought his injunction order of 19 May 1972 may have been premature.

On 5 September 1972, the Schwinds and Pinger filed a motion to vacate the order entered by Judge Mejda on 25 August 1972. The motion also prayed for the issuance of a writ of assistance in 71 CH 1416 and for judgment against the Mattsons in 72 CH 2802 in the sum of $4,850. The motion with regard to relief sought in 71 CH 1416 was denied. Again, there was no express disposition of the motion for judgment in 72 CH 2802.

On 15 September 1972, Nelson Chevrolet, another judgment creditor of the Mattsons, assigned its judgment to one James Hunter. Hunter sued out a writ of execution which was immediately served on Mr. Mattson at the Sheriff's office and returned no part satisfied. On the same day,

Hunter redeemed the Mattson property and received a certificate of redemption. The sheriff's sale in respect of Hunter was set for 16 October 1972.

Thereafter, the Schwinds and Pinger filed another petition in 71 CH 1416 seeking: (1) the vacation of the order of 25 August 1972; (2) a writ of assistance; (3) the nullification of Hunter's redemption of 15 September; and (4) a stay of the sheriff's sale to take place on 16 October 1972. This petition was denied on 19 September 1972. The Schwinds also filed in 72 CH 2802 a petition for judgment in the amount of the earnest money, which, on 19 September 1972, was expressly denied as being premature.

The Schwinds and Pinger then filed on 22 September 1972 a third petition to vacate the order of 25 August and to issue a writ of assistance. This petition was also denied. On the same day the Schwinds and Pinger filed a notice of appeal from the decretal order of 25 August 1972, and from the order of 19 September 1972 denying the Schwinds' petition for judgment, and from the order entered 22 September 1972 denying the petition for a writ of assistance.

Subsequently, on 12 October 1972, the Schwinds and Pinger filed a petition for a stay of the order of 25 August 1972 and for the setting of a *supersedeas* bond. This petition was denied because petitioners had failed to comply with the time requirements of Supreme Court Rule 305 (Ill. Rev. Stat. 1971, ch. 110A, par. 305).

On 16 October 1972, the sheriff's sale was held. Hunter bid $36,103 and received a sheriff's deed. One month later, on 17 November 1972, Hunter conveyed the property by warranty deed to Adolph and Mary Worlatschek (presumably themselves purchasers in good faith) for the sum of $48,500.

OPINION

■■■ The first issue we must decide is whether the order of 19 September 1972 in 72 CH 2802 denying appellants' petition for judgment is a final, and therefore, appealable order as required by Supreme Court Rule 301 (Ill. Rev. Stat. 1971, ch. 110A, par. 301). A final order is one which terminates the litigation between the parties on the merits of the cause, so that, if affirmed, the trial court has only to proceed with the execution of the judgment. (*South Chicago Comm. Hospital v. Industrial Com.* (1969), 44 Ill.2d 119, 254 N.E.2d 448; *Village of Niles v. Szczesny* (1958), 13 Ill.2d 45, 147 N.E.2d 371.) The order appealed from is not such an order because it clearly does not reflect that the trial judge has made a decision on the merits of the case. It is apparent only that the trial judge was of the opinion that such a motion was premature at that stage of the proceeding. Therefore, because the order appealed from is not a final appealable order, the appeal from that order is dismissed.

■■ The next issue we must decide is whether events occurring subsequent to the entry of the decree of 25 August 1972 in 71 CH 1416 have rendered moot the appeal from that order and from the order of 22 September 1972 denying the petition for a writ of assistance. The record discloses that the property which is the subject of this appeal has been conveyed to third parties who are not parties to this litigation. The record further discloses that appellants failed to perfect a stay of enforcement of that decree within 30 days of its entry as required by Supreme Court Rule 305. (Ill. Rev. Stat. 1971, ch. 110A, par. 304.) As a result, those third parties own the property free and clear, without regard to a possible reversal of the decree. (Ill. Rev. Stat. 1971, ch. 110A, par. 305(i).) Therefore, no effective relief as to the ownership or possession of the real property could be given appellants. Under these circumstances, the Supreme Court has dismissed an appeal as moot. *Barnard v. Michael* (1945), 392 Ill. 130, 63 N.E.2d 858.

A dismissal in this case is contingent upon the trial court's having had *jurisdiction* to enter the order extending the period of redemption from 1 August 1972 thru 15 September 1972. Case law clearly establishes that a court has jurisdiction to permit a redemption, even though the statutory redemption period has expired. (See *Mohr v. Sibthorp* (1946), 395 Ill. 418, 69 N.E.2d 487; *Henderson v. Harness* (1900), 184 Ill. 520, 56 N.E. 786; *Ogden v. Stevens* (1909), 241 Ill. 556, 89 N.E. 741.) Whether, on a factual basis, it was erroneous to extend the period in this case is irrelevant to the question of jurisdiction to extend.

■■ Therefore, because no effective relief can be given to appellants with regard to this property, we dismiss the appeal from the decree of 25 August 1972 and from the order of 22 September 1972 as being moot.

■■ Appellants suggest that, since we had earlier denied a motion by appellees to dismiss this appeal, which motion was based on the very grounds upon which we hereby now do dismiss the appeal, we are now precluded from dismissing this appeal. We do not agree. A denial of a motion to dismiss an appeal does not preclude a subsequent dismissal on the same grounds suggested in the motion based upon a full consideration of the briefs, arguments of counsel, and trial record. *Mt. Vernon Girl Scout Council v. Girl Scouts of United States of America* (1965), 55 Ill.App.2d 443, 205 N.E.2d 474 (supplemental opinion).

For the foregoing reasons, the appeal in this consolidated case is dismissed.

Appeal dismissed.

STAMOS and LEIGHTON, JJ., concur.