GLEN ELLYN SAVINGS AND LOAN ASSOCIATION, Plaintiff-Appellee, *v.* THE STATE BANK OF GENEVA, Trustee, *et al.,* Defendants-Appellants.— (ROBERT E. NILLES, INC., Counterplaintiff-Appellant, *v.* GLEN ELLYN SAVINGS AND LOAN ASSOCIATION *et al.,* Counterdefendants-Appellees.)

Second District   No. 77-211

Opinion filed November 17, 1978.

Peter J. Nordigian, of Lonchar & Nordigian, of Waukegan, for appellants.

Thomas F. Winters, of Demling & Jegen, of Glen Ellyn, for appellees.

Mr. JUSTICE NASH delivered the opinion of the court:

Defendant Robert E. Nilles, Inc., appeals from a decree foreclosing a mortgage and supplemental orders entered therein which declared its interest in the subject property to be inferior to plaintiff's and determined its right to redeem had expired.

Plaintiff, Glen Ellyn Savings and Loan Association (hereinafter Glen Ellyn), filed its complaint to foreclose a mortgage dated December 23, 1972, and recorded December 26, 1972, given to it by defendants Ralph and Rose Cantrell to secure their note for $102,500 which Glen Ellyn also held. The property securing the mortgage consisted of 12 vacant lots located in the Marian Hills Subdivision in Lake County, Illinois. The complaint joined as defendants the State Bank of Geneva, as trustee, which then held record title, Ralph and Rose Cantrell, mortgagors, unknown owners and Robert E. Nilles, Inc., appellant herein. In addition to the usual allegations relating to the mortgage and the debt secured by

it, the complaint alleged that, although not known to Glen Ellyn when it accepted the mortgage, Ralph Cantrell had previously entered into a written contract to sell the property to Robert E. Nilles, Inc. (hereinafter Nilles). Nilles answered, essentially admitting Glen Ellyn's mortgage but asserting that the mortgage was subject, subordinate and junior to Nilles' contractual interest in the property. Nilles also counterclaimed alleging that on July 10, 1972, it had entered into the written agreement with Ralph Cantrell to purchase the property for $97,000 and had sought to complete that purchase of the property on August 1, 1972, pursuant to the terms of the agreement, but that Cantrell had refused to do so. Nilles alleged that it recorded the agreement in the office of the recorder of Lake County on December 20, 1972, but that on December 23, 1972, Ralph and Rose Cantrell executed the mortgage Glen Ellyn now seeks to foreclose and on June 26, 1973, conveyed title to the State Bank of Geneva, as trustee. In its counterclaim Nilles sought specific performance of the agreement for the sale of the real estate to it, denial of foreclosure by plaintiff and a declaration that its interest in the property was superior to that of all other parties.

After notice to all parties, the trial court granted a motion by Glen Ellyn to sever its foreclosure action from all other pending actions and, after having considered Glen Ellyn's affidavit of prove-up (Ill. Rev. Stat. 1975, ch. 95, par. 22b), entered the decree of foreclosure on May 17, 1976. That decree found the material allegations of the complaint to be true and found that plaintiff had a valid and subsisting lien on the subject property in the total sum of $137,709.57 for principal and interest due for which the mortgagors were in default. It then determined that Glen Ellyn's mortgage was a valid first lien against the property and the interests therein of defendants the State Bank of Geneva, as trustee, Ralph and Rose Cantrell and unknown owners and directed that it be sold on June 24, 1976, to satisfy the sum due. While the decree also found that the State Bank of Geneva, as trustee, Ralph and Rose Cantrell and unknown owners owned the equity of redemption in the real estate foreclosed upon, it failed to adjudicate the date upon which the period of redemption would commence, as required by statute (Ill. Rev. Stat. 1975, ch. 77, par. 18e).

Insofar as it referred directly to defendant Nilles the decree provided "[t]hat the rights and interest of all the other parties, except the interest of ROBERT E. NILLES, INC. (whose priority is yet to be determined), to this cause in and to the property hereinbefore described are inferior to the lien of the Plaintiff* * *." It further provided that "[n]othing contained herein in any part of this Decree shall be deemed to affect any of the rights of ROBERT E. NILLES, INC. * * * in and to the property herein foreclosed."

Glen Ellyn purchased the property at the sale, applying $97,000 of the indebtedness due it for its bid, and on June 24, 1976, the court approved the report of sale and distribution and entered a deficiency judgment in the sum of $40,064.34 against the State Bank of Geneva, as trustee, and Ralph and Rose Cantrell.

The next chapter opened on September 7, 1976, with Glen Ellyn's motion for summary judgment directed to the issues remaining under the complaint to foreclose mortgage and the counterclaim filed by defendant Nilles. The motion alleged there was no justiciable issue of fact, that the proceeds of the mortgage executed by Ralph and Rose Cantrell were the source of funds by which they had purchased the subject property and that it was a purchase money mortgage superior to any interest Nilles might have by virtue of its contract with Ralph Cantrell. Glen Ellyn's motion was supplemented by an affidavit of Ralph Cantrell setting forth that he had applied to Glen Ellyn for a mortgage on or about November 23, 1972, to obtain funds to purchase the property. Loan application and closing statement documents were attached to Cantrell's affidavit which identified the property and the mortgage foreclosed herein and showed disbursement of the $102,500 loan proceeds as follows:

| | | |
|---|---|---|
| (1) | Glen Ellyn Savings and Loan Association for costs and service charges | $2,759.25 |
| (2) | Life Savings & Loan Association | 78,710.89 |
| (3) | George J. Klupar | 11,000.00 |
| (4) | Ralph and Rose Cantrell | 10,029.86 |
| | | $102,500.00 |

A second affidavit in support of the motion was submitted by John F. Rosch, who was attorney for Glen Ellyn and its president. It stated Rosch had examined records of Chicago Title and Trust Company and documents in the recorder's office and determined that defendant Ralph Cantrell first acquired a fee interest in the property by a trustee's deed made December 23, 1972, and recorded January 17, 1973, noting that this deed and the subject mortgage were both executed the same day.

In further support of its motion, Glen Ellyn submitted the answers made by Nilles to a request for admission of facts served upon it. There Nilles acknowledged it had entered into the written agreement with Ralph Cantrell on July 10, 1972, and that it was thereafter recorded on December 20, 1972; by not responding to other questions, Nilles further acknowledged that on those dates the record title was not vested in Ralph Cantrell but was held by Melrose Park National Bank, as trustee. Nilles also admitted the Cantrells executed the mortgage in question and received a trustee's deed from the Melrose Park National Bank on

December 23, 1972, the mortgage being thereafter recorded on December 26 and the deed on January 17, 1973.

Glen Ellyn's motion for summary judgment was set for hearing for October 22, 1976, and Nilles served notice on the attorney for defendants Ralph and Rose Cantrell that they appear and produce at the hearing some 17 categories of documents and records relating generally to their transactions with Glen Ellyn, trusts in which they had an interest over the past 7 years, improvements made in the Marian Hills Subdivision and numerous other matters relating to their business affairs. On October 22 Nilles also filed an affidavit stating, in substance, that Ralph Cantrell had represented himself to Nilles as the sole owner of the property and had acted towards it consistently with this representation in dealings with the Village of Tower Lakes and others for improvement of the property and its annexation to the village.

As a report of the proceedings has not been furnished relating to the hearing of the summary judgment motion on October 22, 1976, we refer to the record which discloses an order entered November 22, 1976, granting that motion. There the trial court found that the mortgage in issue was a purchase money mortgage, as its proceeds had been used by the mortgagors, the Cantrells, to acquire title to the subject property and that the rights and interest of Nilles under its earlier contract with Cantrell were inferior to the lien of Glen Ellyn's mortgage against the property. Nilles sought reconsideration of the November 22 order alleging the trial court erred in hearing the matter when the Cantrells had failed to appear with the documents requested by Nilles and did not testify at the hearing. Nilles also argued a question of fact remained whether there was a purchase money mortgage and, noting a dispute had arisen between the parties as to what rights of redemption existed, if any, requested the court to clarify its order in that respect.

At this stage of the proceedings, the record discloses that Stephen Deerwester was permitted to intervene and he was added as a plaintiff and counterdefendant by order entered December 28, 1976. Deerwester's motion to intervene set forth that on December 21, 1976, Glen Ellyn had assigned to him all of its right, title and interest in the certificate of sale of the subject property and that on December 27, 1976, another judge of the trial court had executed and delivered to Deerwester a judicial deed to the property which he had recorded on that day.

By an order entered January 3, 1977, the trial court denied Nilles' pending motion for reconsideration of its November 22 order but did take under further advisement that portion of Nilles' motion requesting that its redemption rights be determined. On January 24, 1977, an order appears in the record finding that Nilles' right to redeem expired

December 25, 1976, and directing that determination be entered nunc pro tunc as of January 3, 1977.

Nilles filed its notice of appeal on February 1, 1977, in which it sought appellate review of the decree of foreclosure and all subsequent orders entered in this cause. The notice of appeal, however, does not bring to final focus the disputes between these parties. Nilles also requested the trial court to set an appeal bond pursuant to Supreme Court Rule 305(b) (Ill. Rev. Stat. 1975, ch. 110A, par. 305(b)). Plaintiff-counterdefendant, Stephen Deerwester, then responded in opposition asserting that the motion must be denied as Nilles had failed to perfect a stay of the final judgment entered against it within 30 days from January 24, 1977, the date of entry of the last order relating to reconsideration of the judgment of November 22, 1976, pursuant to Supreme Court Rule 305(i) (Ill. Rev. Stat. 1975, ch. 110A, par. 305(i)), and that the judgment could not be stayed after the 30-day period had passed. Deerwester also asserted that in reliance on Nilles' failure to seek a stay pursuant to Rule 305(i) he had conveyed 9 of the 12 lots to third party, bona fide purchasers for value and that contracts to purchase the remaining 3 lots had been executed. The motion states Deerwester so conveyed five of the lots by deeds dated January 14, 1977, and four by a deed dated February 8, 1977; it does not disclose dates of conveyance of the remaining three lots. The grantees of 2 of the lots are individuals and the other 10 were conveyed by Deerwester into separate trusts located in 5 different banks.

The trial court's order entered March 31, 1977, set an appeal bond in the sum of $200 but directed that its filing would not constitute a stay of the right of plaintiff to sell the land foreclosed and that the request for a stay was denied. Nilles has not requested that this court stay the judgments from which he has appealed.

Nilles contends: (1) that Glen Ellyn's mortgage is inferior to its purchase agreement; (2) that an issue of fact exists whether Glen Ellyn had a purchase money mortgage and summary judgment was, therefore, erroneous; (3) that the trial court erred in ruling Nilles' redemption right had expired, in denying its motion for stay of the judgment and in refusing to permit testimony and production of documents at the summary judgment hearing.

Plaintiff-counterdefendant, Stephen Deerwester, has filed a motion to dismiss the appeal herein which, together with Nilles' objection to it, was ordered taken with the case and we will address that issue first. Deerwester contends Nilles' appeal is moot as he had conveyed the subject property to third-party, bona fide purchasers for value after Nilles failed to perfect a stay of the order appealed from and the reversal or modification of the order cannot now affect their rights in the property by

virtue of Supreme Court Rule 305(i). *Schwind v. Mattson* (1974), 17 Ill. App. 3d 182, 307 N.E.2d 673.

Rule 305(i) provides:

> "If a stay is not perfected within 30 days of the entry of the judgment appealed from, or within any extension of time granted under subparagraph (a) (2) of this rule, the reversal or modification of the judgment does not affect the right, title, or interest of any person who is not a party to the action in or to any real or personal property that is acquired after the judgment becomes final and before the judgment is stayed; nor shall the reversal or modification affect any right of any person who is not a party to the action under or by virtue of any certificate of sale issued pursuant to a sale based on the judgment and before the judgment is stayed. This paragraph applies even if the appellant is an infant or *non compos mentis* or under duress at the time the judgment becomes final." (Ill. Rev. Stat. 1975, ch. 110A, par. 305(i).)

By its terms title to property held by a person who was not a party to the litigation and who acquired it after the judgment appealed from became final and before it was stayed will not be affected by a reversal or modification of that judgment. The rule also protects rights in property acquired under a certificate of sale issued to any person not a party before the judgment is stayed.

The final judgment from which Nilles appeals was entered January 24, 1977, and it was not stayed during the ensuing 30-day period. Nilles first sought to do so in March and the trial court was then apparently persuaded by Deerwester's erroneous objection that the stay could not be granted as it had not been sought within the 30-day period. The court thereupon denied the stay although it would have been well within its discretion to have granted it under the circumstances of this case. Nilles has not renewed its request for a stay in this court as the rule allows.

The record of this case, however, does not disclose, as it did in *Schwind,* that the property has been conveyed to third parties who are not parties to the litigation. For evidence of that status Deerwester has simply referred to the allegations made in his response to Nilles' motion for a stay in the trial court. Those allegations do not unequivocally give us notice of facts showing the appeal to be moot (see *Commonwealth Edison Co. v. Pollution Control Board* (1977), 51 Ill. App. 3d 345, 367 N.E.2d 270) and we may not rely upon them for that purpose. Ten of the lots were apparently conveyed into blind trust, the beneficiaries or purposes of which are not shown, and the remaining two lots were conveyed to individuals who might or might not be simply nominees of a party to this action. We also note that the judgment appealed from

became final January 24, 1977, and that Deerwester's response discloses that at least five of the lots were conveyed before that date and the pertinent dates of conveyance are omitted for three other lots. Title to property acquired by a third party before the judgment is final would not be protected by Rule 305(i).

■■ The motion to dismiss the appeal as moot will be denied as we cannot determine, on this record, whether or not the subject property can be affected by our judgment of the merits of this appeal. We will return to this issue again at the conclusion of the opinion.

Nilles contends first that its interest in the subject property under its contract to purchase from Ralph Cantrell had priority over that of Glen Ellyn as mortgagee because the contract had been recorded first in time, relying upon sections 28 and 30 of "An Act concerning conveyances" (Ill. Rev. Stat. 1975, ch. 30, pars. 27, 29) and 27 Ill. L. & Prac. *Mortgages* §99 (1956).

Glen Ellyn presented an affidavit by its attorney in support of its summary judgment motion in which it set forth the record chain of title of the subject property during all of the time in issue. Nilles did not challenge the factual accuracy of this representation by counteraffidavit or other evidence submitted for consideration by the trial court. The records disclosed that title to the property was acquired by the Melrose Park National Bank, as trustee, on September 7, 1971, by a warranty deed from Marian D. Klupar which was recorded November 18, 1971. The trustee bank retained title until December 23, 1972, when it conveyed the property to Ralph and Rose Cantrell by its trustee's deed which was recorded January 17, 1973. It is apparent, and undisputed, that Ralph Cantrell was not in the chain of title of the property on June 19, 1972, when he accepted Nilles' offer to purchase it for $97,000, or on December 20, 1972, when that contract was recorded. Ralph Cantrell was a stranger to the record title of the subject property until he and his wife acquired their interest therein by the trustee's deed of December 23, 1972, on the same day the Cantrells gave their mortgage to Glen Ellyn.

■■ It has been said that to constitute constructive notice to third persons an instrument must be in the chain of title to the property and will not be considered to be notice of record simply because it has been recorded at some time prior to acquisition of title. (*Landis v. Miles Homes, Inc.* (1971), 1 Ill. App. 3d 331, 334-35, 273 N.E.2d 153, 155.) Records need not be searched for deeds, mortgages or other conveyances made by a vendor before he became vested in title and his vendee is not chargeable with constructive notice of matters shown by records not in the chain of title. (*Leeser v. Kibort* (1927), 243 Ill. App. 258, 262; *Booker v. Booker* (1904), 208 Ill. 529, 538-41, 70 N.E. 709, 713-14; *Colonial Building & Loan Association v. Boden* (1936), 169 Md. 493, 182 A. 665.) It has

also been held that where one gives a mortgage on land without having title thereto, the record of it is not constructive notice to either a purchaser or encumbrancer, in good faith, since the mortgage will not appear in the chain of title. (*Rohde v. Rohn* (1907), 232 Ill. 180, 83 N.E. 465.) While one who purchases property with actual notice of a prior agreement by the vendor to convey to another person may be regarded as the trustee of the latter and directed to convey the land in the same manner as his vendor had agreed (*Anderson v. Anderson* (1911), 251 Ill. 415, 422, 96 N.E. 265, 268), Nilles makes no claim that Glen Ellyn had actual notice of the prior agreement with Ralph Cantrell in this case.

■ It is apparent that Glen Ellyn would be chargeable with constructive notice of any conveyance or encumbrance placed upon the land from December 23, 1972, forward as it knew the Cantrells came into title on that date; it cannot, however, be charged with actual or constructive notice, on this record, of Ralph Cantrell's contract with Nilles which was both entered into and recorded prior to December 23, 1972, when Cantrell first came into title. Finding as we do that Glen Ellyn's mortgage is superior to Nilles' claim by virtue of its contract we need not consider the further contentions of the parties on the issue of whether or not it was a purchase money mortgage (see generally *Wermes v. McCowan* (1936), 286 Ill. App. 381, 3 N.E.2d 720; *Bank of Homewood v. Gembella* (1964), 48 Ill. App. 2d 316, 199 N.E.2d 293).

■■ Nor is there merit to Nilles' contention it should have been permitted to present evidence by the examination of witnesses and introduction of documents at the hearing of the motion for summary judgment. It is well established that the purpose of summary judgment is not to try a disputed issue of fact but to determine whether a genuine issue as to a material fact exists. (*McHenry Sand & Gravel, Inc. v. Rueck* (1975), 28 Ill. App. 3d 460, 461, 328 N.E.2d 679, 680.) That determination is to be made by the court from the affidavits, depositions, admissions, exhibits and pleadings in the case (*Lesser v. Village of Mundelein* (1975), 36 Ill. App. 3d 433, 437, 344 N.E.2d 29, 32) and the summary process provided by section 57 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 57) does not contemplate a trial in the traditional sense.

We believe, however, there is merit to Nilles' contention it was improperly deprived of an opportunity to exercise its right to redeem.

The decree entered May 17, 1976, failed to adjudicate the date of commencement of the period of redemption from the foreclosure and sale as required by statute (Ill. Rev. Stat. 1975, ch. 77, par 18e). Prior to a 1973 amendment to the statute the failure of the court to adjudicate the date upon which the last owner of an equity of redemption had been served in the cause, so as to fix the commencement of the period of redemption, rendered the decree void in part and required a

supplemental decree to supply the omission. (See *Chapman, Mazza, Aiello, Inc. v. Ace Lumber & Construction Co.* (1967), 83 Ill. App. 2d 320, 329-32, 227 N.E.2d 562, 567-69.) At the time the decree in this case was entered, however, the statute provided that a decree of foreclosure will not be invalidated by reason of the failure of the court to fix that date but that the redemption period would then be for 12 months from the date of the entry of the decree or 6 months from the foreclosure sale, whichever is later. In this case the parties now agree Nilles had a right to redeem until May 17, 1977.

On Glen Ellyn's motion the issues raised by Nilles' answer and counterclaim were severed and it was permitted to proceed to trial solely against the Cantrells, as mortgagors, the State Bank of Geneva, as trustee, and the unknown owners. The decree thereafter entered specifically reserved determination of the priority of Nilles' interest in the property relative to the mortgage and found that each of the other defendants were owners of an equity of redemption in the property but did not consider whether Nilles had such a right. The decree further provided that its terms would not be deemed to affect any right Nilles might have in the property foreclosed. Strangely enough, however, the decree also determined that Glen Ellyn had a valid first lien on the premises and ordered its foreclosure and sale to satisfy Glen Ellyn's judgment for $137,709.57.

Glen Ellyn did not file its motion for summary judgment for determination of the reserved matter of Nilles' rights herein until September 1976 and the trial court thereafter, by its order entered November 22, 1976, correctly determined Nilles' contract was inferior to the Glen Ellyn mortgage. This order, however, also failed to adjudicate the date the redemption period commenced nor did it consider the issue of whether Nilles was also an owner of an equity of redemption. Nilles sought reconsideration and a determination of the redemption rights of the parties and on January 24, 1977, the trial court erroneously found Nilles' right to redeem had recently expired on December 25, 1976, and no longer existed.

Glen Ellyn and its apparent successor in interest, Stephen Deerwester, do not now dispute that Nilles, as a defendant in the foreclosure proceeding, had a right to redeem from the sale and the parties also agree that all owners of an equity of redemption in this case could exercise such right until May 17, 1977. (Ill. Rev. Stat. 1975, ch. 77, par. 18e.) Nilles contends, essentially, it could not redeem as all of its rights herein had been reserved by the original foreclosure decree and the trial court never thereafter determined it had a redemption right until after that right had expired. Deerwester responds that while both the decree entered May 17, 1976, and the supplemental order of January 24, 1977, relating to the

reserved rights of Nilles were in error they are binding upon Nilles and foreclose his right to redeem.

■■ ■ The general rule is that one entitled to redeem from a judicial sale must do so within the period provided by statute or be barred and it has been held that a supersedeas bond and order will not suspend or stay the running of the statutory period of redemption during the pendency of an appeal. (*Fairfield Savings & Loan Association v. Central National Bank* (1958), 19 Ill. App. 2d 465, 154 N.E.2d 333; see *Grove v. Kerr* (1925), 318 Ill. 591, 149 N.E. 517.) It has also been recognized, however, that equity will give relief where fraud, mistake or other infirmity on the part of the purchaser or a public official prevented redemption within the time prescribed. *Phoenix Mutual Life Insurance Co. v. Legris* (1975), 30 Ill. App. 3d 678, 684, 334 N.E.2d 399, 403; see *Skach v. Sykora* (1955), 6 Ill. 2d 215, 127 N.E.2d 453; 55 Am. Jur. 2d *Mortgages* §892 (1971); Annot., 52 A.L.R.2d 1327 (1957).

In our view the infirmities in the procedures we have described require that Nilles be given an opportunity to exercise the right of redemption withheld from it. The trial court, at Glen Ellyn's request, reserved consideration of the issue whether Nilles had a right to redeem and then erroneously determined, approximately eight months later, that, while it did once exist, the right had recently expired. In this circumstance a tender of redemption to the court which had determined it did not exist would have been a useless act. When Nilles sought to stay the effect of the judgment its request was denied on the mistaken belief of the trial court, urged upon it by Deerwester, that it could not do so because 30 days had passed since entry of the judgment. We note also that while the reserved issues of Nilles' priority of interest and redemption rights were being considered by the trial court Glen Ellyn assigned its interest in the property to Deerwester who then was granted a deed to the property by another judge of the court. Deerwester correctly concedes on appeal it had no right to the judicial deed as the period of redemption had not yet expired; it seems apparent that the purchasers of the property and the court acted under a series of mistaken beliefs to Nilles' detriment.

■■ A court has jurisdiction to permit redemption even though the statutory period has expired (*Schwind v. Mattson* (1974), 17 Ill. App. 3d 182, 187, 307 N.E.2d 673, 678) and we find this to be a proper case in which to do so. But see, *e.g., Federal Land Bank v. Droste* (1975), 26 Ill. App. 3d 256, 325 N.E.2d 37.

For the reasons we have discussed the judgment of the trial court will be reversed and the cause remanded. The trial court is directed to hear and determine whether the issue of redemption has become moot as to all or any part of the subject property by operation of Supreme Court Rule 305(i) (Ill. Rev. Stat. 1975, ch. 110A, par. 305(i)). If it has not, then the trial

court will permit Nilles to exercise its right of redemption against any property still subject thereto under such terms and conditions as the law may provide and the trial court shall determine.

In view of the history of this litigation and in order to stabilize the rights of all parties who may deal with the subject property until the directions of this opinion can be carried out, we stay the force and effect of the judgment below effective upon the filing of this opinion and until the further order of this court.

Reversed and remanded with directions.

BOYLE and GUILD, JJ., concur.